STEVE W. BERMAN (admitted pro hac vice)
GEORGE W. SAMPSON (admitted pro hac vice)
CRAIG R. SPIEGEL (SBN 122000)
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 8th Avenue, Suite 3300
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
Email: steve@hbsslaw.com
Email: george@hbsslaw.com
Email: craig@hbsslaw.com
       -and-
ELAINE T. BYSZEWSKI (SBN 222304)
HAGENS BERMAN SOBOL SHAPIRO LLP
301 North Lake Avenue, Suite 203
Pasadena, California 91101
Telephone: (213) 330-7150
Facsimile: (213) 330-7152
Email: elaine@hbsslaw.com

[Additional Counsel Listed on Signature Page]

Counsel for the Proposed Class

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| MATTHEW EDWARDS, et al., individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>NATIONAL MILK PRODUCERS FEDERATION, aka COOPERATIVES WORKING TOGETHER; DAIRY FARMERS OF AMERICA, INC.; LAND O'LAKES, INC.; DAIRYLEA COOPERATIVE INC.; and AGRI-MARK, INC.,<br><br>Defendants. | Case No. 11-CV-04766-JSW<br><br>[consolidated with 11-CV-04791-JSW and 11-CV-05253-JSW]<br><br><u>CLASS ACTION</u><br><br>**STIPULATION AND [~~PROPOSED~~] ORDER RE ESI DISCOVERY PROTOCOL**<br><br>Courtroom: 11 [Hon. Jeffrey S. White] |

# [~~PROPOSED~~] ORDER RE ESI DISCOVERY PROTOCOL

## I. DEFINITIONS

**A.** **"Electronically stored information"** or **"ESI,"** as used herein, means and refers to computer generated information or data of any kind, stored in or on any storage media located on computers, file servers, disks, tape or other real or virtualized devices or media. Non limiting examples of ESI include:

- Emails;
- E-Mail Server Stores (e.g., Lotus Domino .NSF or Microsoft Exchange .EDB);
- Word processed documents (e.g., Word or WordPerfect files and drafts);
- Spreadsheets and tables (e.g., Excel or Lotus 123 worksheets);
- Accounting Application Data (e.g., QuickBooks, Money, Peachtree data);
- Image and Facsimile Files (e.g., .PDF, .TIFF, .JPG, .GIF images);
- Sound Recordings (e.g., .WAV and .MP3 files);
- Video and Animation (e.g., .AVI and .MOV files);
- Databases (e.g., Access, Oracle, SQL Server data, SAP);
- Contact and Relationship Management Data (e.g., Outlook, ACT!);
- Calendar and Diary Application Data (e.g., Outlook PST, blog entries);
- Presentations (e.g., PowerPoint, Corel Presentations);
- Computer Aided Design/Drawing Files;
- Cloud based or other virtualized ESI, including application, infrastructure and data; and
- Backup and Archival Files (e.g., Vertitas, Zip, .GHO).

Notwithstanding anything to the contrary herein, the following ESI are not discoverable in this action except upon a showing of good cause as may be determined by the Court:

1. Information contained on back-up tapes or other long-term, archival storage media that were created for use as a disaster recovery mechanism. If a Party requests that such long-term storage media be searched for ESI that is not cumulative of ESI stored in active media or that is not available as paper or hard copy discovery, the Parties agree to meet and confer in good faith

regarding the request, including the appropriateness of cost sharing.

2. Temporary data stored in a computer's random access memory or RAM.

3. Temporary data such as voicemail, instant messages, social media postings and other forms of ESI that are not normally recorded and preserved in the course of the company's business operations.

B. **"Native data format"** means and refers to the format of ESI in which it was generated and/or as used by the producing party in the usual course of its business and in its regularly conducted activities.

C. **"Metadata"** means and refers to information about information or data about data, and includes without limitation (i) information embedded in or associated with a native file that is not ordinarily viewable or printable from the application that generated, edited, or modified such native file which describes the characteristics, origins, and/or usage of the electronic file and/or (ii) information generated automatically by the operation of a computer or other information technology system when a native file is created, modified, transmitted, deleted or otherwise manipulated by a user of such system.

D. **"Static Image"** means or refers to a representation of ESI produced by converting a native file into a standard image format capable of being viewed and printed on standard computer systems.

E. **"Documents"** includes writings, drawings, graphs, charts, photographs, sound recordings, images, and other data, data records or data compilations — stored in any medium from which information can be obtained.

F. **"Media"** means an object or device, real or virtualized, including but not limited to a disc, tape, computer or other device, on which data is or was stored.

II. **FORMAT OF PRODUCTION**

A. **TIFF Image Files.** The Parties agree that all ESI will be produced as single-page, black-and-white Group IV TIFF image files of at least 300 dpi resolution, except as provided in section II.H. Each image file shall be of the form: <Bates num>.tif where <Bates num> is the

BATES number of the page. Original document orientation as displayed in the native file should be maintained in the TIFF image (*e.g.*, portrait to portrait and landscape to landscape).

      **B.**    **Text Files.** Accompanying these TIFF files shall be a multipage text (.TXT) file containing searchable text from the native file. Each filename shall be of the form: <Bates num>.txt where <Bates num> is the BATES number of the first page of the document. Text shall be encoded in UTF-8. Load files of the static images should be created and produced together with their associated static images to facilitate the use of the produced images by a document management or litigation support database system. The parties shall meet and confer to the extent reasonably necessary to facilitate the import and use of the produced materials with commercially available document management or litigation support software.

      **C.**    **Production of Structured Data.** To the extent a response to discovery requires production of discoverable electronic information contained in a database, in lieu of producing the database, the parties shall meet and confer to, with an understanding of which fields are relevant, agree upon a set of queries to be made for discoverable information and generate a report in a reasonably usable and exportable electronic file (e.g., Excel or CSV format) for review by the requesting party or counsel. Upon review of the report(s), the requesting party may make reasonable requests for additional information to explain the database schema, codes, abbreviations, and different report formats or to request specific data from identified fields.
If a producing party asserts that certain ESI is inaccessible or otherwise unnecessary or inadvisable under the circumstances, or if the requesting party asserts that, following production, certain ESI is not reasonably usable, the parties shall meet and confer with their respective technology experts to discuss resolving such assertions. If the parties cannot resolve any such disputes after such a meet and confer has taken place, the issue shall be presented to the Court for resolution.

      **D.**    **Production of Physical Documents.** Documents or records that either were originally generated as ESI but now only exist in physical hard-copy format, and documents or records that were originally generated in hard-copy format, shall be converted to a single page .TIFF file and produced following the same protocols set forth herein or otherwise agreed to by the parties. OCR will be provided for such documents.

E.  **Native Files.**  In accordance with section II.A, the parties agree that Documents shall be produced as TIFF images.  The exception to this rule shall be presentation-application files (*e.g.*, MS PowerPoint), spreadsheet-application files (*e.g.*, MS Excel), personal databases (*e.g.*, MS Access), and multimedia audio/visual files such as voice and video recordings (*e.g.*, .wav, .mpeg, and .avi files), for which all ESI items shall be produced in native format.  Each native file shall be of the form: <Bates num>.ext where <Bates num> is the BATES number of the document and .ext is the original native file extension.  In the event a Document subject to this paragraph requires redaction, it shall be produced in TIFF in accordance with paragraph II.I below.  If upon review the receiving party believes the production of an above-listed document in TIFF is inadequate, it shall meet and confer with the producing party regarding whether an alternate method of redaction would be appropriate.

F.  **Document Unitization.**  All productions will include data load files and image load files as detailed in Section II.L below.  Each party will designate its preferred format for receiving production documents.  Defendants' preferred load file format is set forth in Section L. Plaintiffs' preferred production format is set forth in Attachment A.  The image load file shall reference each TIFF file in the corresponding production, and the total number of TIFF files referenced in the load file shall match the total number of image files in the production.  The total number of documents referenced in a production's data load file should match the total number of designated document breaks in the corresponding image load file for that production.

G.  **Duplicates.**  Removal of duplicate documents shall be performed but shall only be done on exact duplicate documents on either a custodian basis or a global basis (based on MD5 or SHA-1 hash values at the document level).

H.  **Color.**  For files not produced in their native format, if an original document contains color, the producing party may produce black and white image(s).  At the request of the receiving party, the parties shall meet and confer to discuss production of color image(s) for specific documents.

I.  **Bates Numbering and Other Unique Identifiers**.  For files not produced in their native format, each page of a produced document shall have a legible, unique page identifier

("Bates Number") electronically "burned" onto the bottom right hand corner of the TIFF image in such a manner that information from the source document is not obliterated, concealed, or interfered with. There shall be no other legend or stamp placed on the document image unless a document qualifies for confidential treatment pursuant to the terms of the Protective Order or Qualified Protective Order entered by this Court in this litigation, or has been redacted in accordance with applicable law or Court order. In the case of confidential materials as defined in a Protective Order, or materials redacted in accordance with applicable law or Court order, a designation may be "burned" onto the document's image at the bottom left hand corner of the page or on top of the redacted text. Each party should use a different production prefix.

For any ESI produced in native data format, the producing party shall produce a single-page TIFF slipsheet indicating that a native item was produced and reflecting the production Bates number, any confidential designation and text stating "Document Produced in Native Format." The native file will be produced in searchable format, preferably in extracted text.

**J.    Production Media.**  Documents shall be produced on CD-ROM, DVD, external hard drive (with standard PC compatible interface), or such other readily accessible computer or electronic media as the parties may hereafter agree upon (the "Production Media"). Each item of Production Media shall include: (1) text referencing that it was produced in this lawsuit (2) the production date, (3) the production volume for the party; and (4) the Bates number range of the materials contained on such Production Media item.

**K.    Electronic Text Files.**  Text files for produced documents shall be produced reflecting the full text that has been electronically extracted from the original, native electronic files ("Extracted Text"). The Extracted Text shall be provided in UTF-8 text format and shall be labeled and produced on Production Media in accordance with the provisions of paragraph II.J above, "Production Media". The text files will be named with the unique Bates number of the first page of the corresponding document followed by the extension ".txt." with the relative pathing to these text files included in the "index file" on the production media.

**L.    Metadata.**  The production of Metadata produced will be provided in connection with native data format ESI requested, and includes without limitation, file, application and system

metadata.

The image load file to be provided should be in Concordance Image, or Opticon, format (.OPT or .LOG) and IPRO format (.LFP). This file is a page level load file representing one image per line. As an example:

```
REL00001,REL01,D:\IMAGES\001\REL00001.TIF,Y,,,3
REL00002,REL01,D:\IMAGES\001\REL00002.TIF,,,,
REL00003,REL01,D:\IMAGES\001\REL00003.TIF,,,,
REL00004,REL01,D:\IMAGES\001\REL00004.TIF,Y,,,2
REL00005,REL01,D:\IMAGES\001\REL00005.TIF,,,,
```

The fields are, from left to right:

Field One – (REL00001) – The page identifier

Field Two – (REL01) – The volume identifier

Field Three – (D:\IMAGES\001\REL00001.TIF) – a path to the image to be loaded

Field Four – (Y) – Document marker – a "Y" indicates the start of a unique document.

Field Five – (blank) – unused

Field Six – (blank) – unused

Field Seven – (3) –used to store page count. The image load files described in this paragraph are not required by Plaintiffs, because Plaintiffs can load images directly from the .DAT files. Plaintiffs can produce .TIFF images with the image load files requested by Defendants (.OPT or .LOG). The Metadata fields identified below will be extracted and produced (to the extent available) in a flat delimited text file or .dat format with values enclosed by Concordance standard delimiters:

- Application Name;
- AttachCount (number of attachments);
- Beginning Document Number;
- Ending Document Number;
- BegAttach (the Beginning Document Number of the parent document);
- EndAttach (the Ending Document Number of the last attachment);
- Conversation Index;
- Custodian;
- FileExt (the extension of the filename, e.g., "DOC" for an MS Word document);
- Filename (the original filename);
- Filepath;
- FileSize (in KB);

- Date Created (to the degree such information is reasonably available using "Robocopy" or similar software);
- Time Created (to the degree such information is reasonably available using "Robocopy" or similar software);
- Date Last Modified;
- Time Last Modified;
- RevisionNumber;
- Author;
- To/From/Cc/Bcc fields[1] (including name and email addresses to the degree that they appear on face of the email);
- Date Sent;
- Date Received;
- Time Sent;
- Time Received;
- Time Zone Processed (time zone set during data processing);
- Subject Line;
- MD5;
- MessageID (message ID of the email header);
- Page Count;
- Path to Extracted Text files;
- Path to Native files;
- Volume (indicative of production volume); and
- Family Date (also referred to as Sort Date or Group Date).

The parties are not obligated to populate manually any of these fields if such fields cannot be extracted from a document, with the exception of the CUSTODIAN, VOLUME, and TIMEZONEPROCESSED. VOLUME and TIMEZONEPROCESSED shall be populated by the producing party only to the extent that it can be done on a batch basis. CUSTODIAN shall be populated by the producing party to the extent that a custodian can be identified.

M. **Attachments.** Email attachments and embedded files or links must be mapped to their parent by the inclusion of the BegAttach and End Attach fields. The BegAttach field should list the first page of the parent document and the End Attach filed should list the last page of the last attachment.

N. **Compressed Files.** Compression file types (i.e., .CAB, .GZ, .TAR, .Z, .ZIP) shall be decompressed in a reiterative manner to ensure that a zip within a zip is decompressed into the lowest possible compression resulting in individual folders and/or files.

---

[1] The image files for emails shall include such email header information (e.g., to, from, cc, bcc, date, time, and subject fields) to the degree that they appear on the face of the email.

**III.     OBJECTIONS TO ESI PRODUCTION**

A.     For files not produced in their native format, documents that present imaging or format production problems shall be promptly identified and disclosed to the requesting party; the parties shall then meet and confer to attempt to resolve the problems.

B.     If either party objects to producing the requested information on the grounds that such information is not reasonably accessible because of undue burden or cost, or because production in the requested format is asserted to be not reasonably accessible because of undue burden or cost, and before asserting such an objection, the responding party will inform the requesting party of the format in which it is willing to produce it, the nature and location of the information claimed to not be reasonably accessible, the reason(s) why the requested form of production would impose an undue burden or is unreasonably costly, and afford the requesting party 10 business days from receipt of such notice to propose an alternative means of compliance with the request. Such proposal may include alternative cost estimates for ESI discovery production, may offer a proposal for ESI discovery cost allocation, or both. Notwithstanding anything contained herein to the contrary, a producing party shall not produce ESI in a format not requested or designated by the requesting party unless (i) the parties have met and conferred, and, having been unable to resolve such format production conflict at such meet and confer session, (ii) prior to referral to and resolution of such issue by the court.

C.     If a party believes that responsive ESI no longer exists in its original format, or is no longer retrievable, the responding party shall explain whether any backup or copy of such original ESI exists.

D.     ESI of Limited Accessibility. If a Producing Party contends that any responsive ESI, excluding back-up tapes or other long-term storage media that were created for use as a disaster recovery mechanism, is not reasonably accessible within the meaning of Fed. R. Civ. P. 26(b)(2)(B), that Party shall timely identify such ESI with reasonable particularity and shall provide the Requesting Party with the basis for declining to produce such ESI, including but not limited to information about the nature of any limitations on access, an estimate of the likely costs that might be incurred in producing such ESI, the method used for storage of ESI (for example, the

- 8 -
**STIPULATION AND [PROPOSED] ORDER RE ESI DISCOVERY PROTOCOL**
010263-11 585962 V1 CASE NO.: 11-CV-04766-JSW

type of system used to store the ESI), and where such ESI is kept. The parties shall negotiate in good faith concerning the production of any such ESI. If the Parties are unable to reach agreement, the Parties shall submit any dispute to the Court, who shall determine what burden may be imposed upon the Producing or Requesting Parties to resolve the dispute and whether or to what extent the costs of such production shall be borne by the Producing or Requesting Parties.

IV. **MISCELLANEOUS**

    **A.** This Stipulated Order is not intended to govern any protections or restrictions related to the production of privileged litigation material. The Parties have separately addressed the process for handling the production of privileged litigation materials in the Stipulated Protective Order.

    **B.** Limited 28 U.S.C. § 1920 Waiver. In consideration of the parties' agreed upon Protocol, the producing party agrees not to seek the reimbursement of any increased costs relating to the production, storage, and maintenance of the ESI produced by that party in .tiff format over native format. Nothing herein constitutes an acknowledgement (implicit or otherwise) by any party that ESI-related costs are taxable under 28 U.S.C. § 1920.

THE PARTIES HEREBY STIPULATE AND AGREE TO THE ABOVE TERMS.

Respectfully submitted,

DATED: February 12, 2013    HAGENS BERMAN SOBOL SHAPIRO LLP

By: /s/ Elaine T. Byszewski
Elaine T. Byszewski
HAGENS BERMAN SOBOL SHAPIRO LLP
301 North Lake Avenue, Suite 203
Pasadena, CA 91101
Telephone (213) 330-7150
Facsimile (213) 330-7152
elaine@hbsslaw.com

Steve W. Berman
George W. Sampson
Craig R. Spiegel
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA 98101
Telephone (206) 623-7292
Facsimile (206) 623-0594
steve@hbsslaw.com

| | |
|---|---|
| 1 | george@hbsslaw.com |
| 2 | craig@hbsslaw.com |
| 3 | *Attorneys for the Plaintiffs* |
| 4 | WILLIAMS & CONNOLLY LLP |
| 5 | By: /s/ Steven R. Kuney |
|   | Steven R. Kuney |
| 6 | WILLIAMS & CONNOLLY LLP |
|   | 725 Twelfth Street, N.W. |
| 7 | Washington, D.C. 20005 |
|   | Telephone: (202) 434-5843 |
| 8 | Facsimile: (202) 434-5029 |
|   | skuney@wc.com |
| 9 | BAKER & MILLER PLLC |
| 10 | By: /s/ W. Todd Miller |
|    | BAKER & MILLER PLLC |
| 11 | 2401 Pennsylvania Avenue, N.W., Ste 300 |
|    | Washington, D.C. 20037 |
| 12 | Telephone: (202) 663-7822 |
|    | Facsimile: (202) 663-7849 |
| 13 | tmiller@bakerandmiller.com |
| 14 | Jesse W. Markham, Jr. (SBN 87788) |
|    | Marshall P. Madison Professor of Law |
| 15 | University of San Francisco School of Law |
|    | 2130 Fulton Street |
| 16 | San Francisco, CA 94117 |
| 17 | Telephone: (415) 422-4473 |
|    | Email: markham@usfca.edu |
| 18 | |
|    | *Attorneys for Defendant Dairy Farmers of America, Inc.* |
| 19 | |
| 20 | EIMER STAHL KLEVORN & SOLBERG LLP |
| 21 | By: /s/ Nathan P. Eimer |
|    | Nathan P. Eimer |
| 22 | EIMER STAHL KLEVORN & SOLBERG LLP |
|    | 224 South Michigan Avenue, Suite 1100 |
| 23 | Chicago, Illinois 60604 |
|    | Phone: (312) 660-7601 |
| 24 | Fax: (312) 692-1718 |
|    | neimer@eimerstahl.com |
| 25 | |
|    | *Attorneys for Defendant Land O' Lakes, Inc.* |
| 26 | |
|    | BOND SCHOENECK & KING, PLLC |
| 27 | |
|    | By: /s/ Edward R. Conan |
| 28 | Edward R. Conan (pro hac vice) |

- 10 -
**STIPULATION AND [PROPOSED] ORDER RE ESI DISCOVERY PROTOCOL**
010263-11  585962 V1 CASE NO.: 11-CV-04766-JSW

| | |
|---|---|
| 1 | Suzanne O. Galbato (pro hac vice) |
| | Lucy S. Clippinger (pro hac vice) |
| 2 | BOND, SCHOENECK & KING, PLLC |
| | One Lincoln Center |
| 3 | Syracuse, NY 13202-1355 |
| | Telephone: (315) 218-8000 |
| 4 | Facsimile: (315) 218-8100 |
| | econan@bsk.com |
| 5 | sgalbato@bsk.com |
| | lsclippinger@bsk.com |
| 6 | |
| 7 | FARMER BROWNSTEIN LLP |
| 8 | By:/s/ William S. Farmer |
| | William S. Farmer (SBN 46694) |
| 9 | Jacob P. Alpren (SBN 235713) |
| | FARMER BROWNSTEIN LLP |
| 10 | 235 Pine Street, Suite 1300 |
| | San Francisco, CA 94104 |
| 11 | Telephone (direct and fax): (415) 962-2877 |
| | Main: (415) 795-2050 |
| 12 | wfarmer@farmerbrownstein.com |
| | jalpern@farmerbrownstein.com |
| 13 | |
| 14 | *Attorney for Defendant Dairylea Cooperative Inc.* |
| 15 | KEKER &VAN NEST, LLP |
| 16 | By:   /s/ Paula L. Blizzard |
| | Paula L. Blizzard |
| 17 | Jan N. Little |
| | KEKER &VAN NEST, LLP |
| 18 | 633 Battery Street |
| | San Francisco, CA 94111 |
| 19 | Telephone: (415) 773-6608 |
| | pblizzard@kvn.com |
| 20 | jlittle@kvn.com |
| 21 | Jill M. O'Toole |
| | Susan S. Murphy |
| 22 | SHIPMAN & GOODWIN, LLP |
| | One Constitution Plaza |
| 23 | Hartford, CT 06103 |
| | Telephone (860) 251-5000 |
| 24 | jotoole@goodwin.com |
| | smurphy2@goodwin.com |
| 25 | *Attorney for Defendant Agri-Mark, Inc.* |
| 26 | STEPTOE & JOHNSON LLP |
| 27 | By:/s/   Chong S. Park |
| | Chong S. Park |
| 28 | Kenneth P. Ewing |

- 11 -
**STIPULATION AND [~~PROPOSED~~] ORDER RE ESI DISCOVERY PROTOCOL**
010263-11  585962 V1 CASE NO.: 11-CV-04766-JSW

|   |   |
|---|---|
| 1 | John J. Kavanagh |
| 2 | STEPTOE & JOHNSON LLP<br>1330 Connecticut Ave., NW |
| 3 | Washington, DC 20036<br>Telephone (202) 429-3000 |
| 4 | Facsimile (202) 429-3902<br>CPark@steptoe.com |

Dylan Ruga
STEPTOE & JOHNSON LLP
2121 Avenue of the Stars
Suite 2800
Los Angeles CA 90067
Telephone (310) 734-3228
Facsimile (310) 734-3300
DRuga@steptoe.com
*Attorney for Defendant*
*National Milk Producers Federation*

I, Elaine T. Byszewski, attest that concurrence in the filing of this document has been obtained from each of the other signatories.

IT IS SO ORDERED

Dated: February 14, 2013

_____
Hon. Jeffrey S. White
UNITED STATES DISTRICT JUDGE

ATTACHMENT A: PLAINTIFFS' PREFERRED PRODUCTION FORMAT

**OCR and Extracted Text Files (.TXT Files)**:

- Single text file per document containing all the document's pages
- Filenames should be of the form:

  <Bates num>.txt

  Where <Bates num> is the BATES number of the first page in the document.
- Text must be encoded in UTF-8.

**Images Files**:

- Single page per image
- Single image per file
- TIFF is default FORMAT unless the following formats are agreed to: jpeg, jpeg2000, giff, png, single image tiff, and bmp
- Filenames should be of the form:

  <Bates num>.<ext>

  Where <Bates num> is the BATES number of the page, and <ext> is the appropriate extension for the image format (.jpg, .tif, .png, etc)

**Index Files**:

- Comma Separated Value (.CSV) files (commonly .DAT files)
- First line must contain the column/field names (set forth in Section II.L herein)
- Every row must have the same number of columns/fields (empty values are acceptable)
- Text must be encoded in UTF-8
- Values must be enclosed by Concordance standard delimiters

**Native Index Files**:

- .CSV files
- All lines contain data – first row must NOT contain column headers.

- Every row must have 2 columns/fields (empty values are NOT acceptable)
    - First column/field must contain the BATES number for the document
    - Second column/field must contain the filename (NOT the full path) of the native file. Filenames must be unique in the production – unless the content is identical (for example, a native and an OCR text file may both be named XYZ01234567.TXT if they are identical).
- Text must be encoded in UTF-8
- Values must be enclosed by double quotes (ascii character 34)
- Values must be separated by a comma (ascii character 44)