**United States District Court**
For the Northern District of California

1

2

3

4

5

6 IN THE UNITED STATES DISTRICT COURT

7

8 FOR THE NORTHERN DISTRICT OF CALIFORNIA

9 MATTHEW EDWARDS, et al.,

10       Plaintiffs,                No. C 11-04766 JSW

11   v.

12 NATIONAL MILK PRODUCERS
FEDERATION, aka COOPERATIVES     **ORDER REGARDING MOTION**
13 WORKING TOGETHER, et al.,           **FOR CLASS CERTIFICATION**

14       Defendants.

    _____/
15

16      Now before the Court is the motion for class certification filed by Plaintiffs, the *Daubert*

17 motion to exclude Plaintiffs' expert filed by Defendants, and the motion to strike the *Daubert*

18 motion filed by Plaintiffs. Having considered the parties' pleadings and relevant legal

19 authority, the Court hereby grants in part and denies in part the motion for class certification,

20 denies the request to exclude Plaintiffs' expert, and grants the motion to strike Defendants'

21 separate evidentiary objections.[1]

22                              **BACKGROUND**

23      Plaintiff filed this putative antitrust class action against Defendants National Milk

24 Producers Federation, aka Cooperatives Working Together ("CWT"), Dairy Farmers of

25 America, Inc., Land O'Lakes, Inc., Dairylea Cooperative Inc., and Agri-Mark, Inc. (collectively

26

27     [1] Defendants brought a separate motion to exclude Plaintiffs' expert in violation of
the Northern District Local Civil Rule 7-3(a). Therefore, the Court STRIKES their separate
28 motion. Nevertheless, because Defendants included their basis for excluding Plaintiffs'
expert in their opposition to the motion for class certification, the Court will address their
arguments to exclude Plaintiffs' expert. The Court FURTHER DENIES Defendants' motion
to file a sur-reply to Plaintiffs' supplemental brief.

"Defendants") on behalf of all consumers who indirectly purchased milk and/or other fresh milk products for their own use from 2003 to the present as residents of the fifteen states at issue and of Washington, D.C.  In addition to Washington, D.C., Plaintiffs contend that Defendants violated the state antitrust laws of the following fifteen states: Arizona, California, Kansas, Massachusetts, Michigan, Missouri, Nebraska, Nevada, New Hampshire, Oregon, South Dakota, Tennessee, Vermont, West Virginia, and Wisconsin.

Plaintiffs allege that CWT and its members have engaged in a nationwide conspiracy to limit the production of raw farm milk, and thus increase the price of raw milk, through premature "herd retirements."  (Second Amend. Consolidated Class Action Compl. ("SACCAC"), ¶ 1.)  "These herd retirements required participating dairy farmers to destroy all of the dairy cows in all of their herds and, beginning on April 1, 2009, agree not to reenter the dairy farming business for at least one year."  *Id*.  Plaintiffs allege that this conspiracy artificially inflated, and continues to artificially inflate, the price of milk and other fresh milk products, including cream, half & half, yogurt, cottage cheese, cream cheese, and sour cream. *Id.*

Plaintiff now seeks class certification in each of the fifteen states, plus Washington, D.C., pursuant to Federal Rule of Civil Procedure 23 for the following classes:

> All consumers who, from 2003 to the present, as residents of
> [State], indirectly purchased milk and/or other fresh milk products
> (including cream, half & half, yogurt, cottage cheese, cream cheese,
> and/or sour cream) for their own use and not for resale.

(*Id*. at ¶ 126.)

The United States Department of Agriculture ("USDA") issues Farm Milk Marketing Orders ("FMMO") which set the minimum price which may be charged for raw milk.  *See Carlin v. DairyAmerica, Inc.*, 688 F.3d 1117, 1120 (9th Cir. 2012).  The rates set by FMMOs "consist of only *minimum* prices" from which the prices charged may be increased.  *Id*. at 1130 (emphasis in original).  The AMAA does not mandate a maximum price.  Parties "can and do, negotiate premiums, known as 'over-order' prices, for the sale of milk."  *Id*. at 1120 (quoting

United States District Court

For the Northern District of California

1    *Farmers Union Milk Mktg Coop. v. Yeutter*, 930 F.2d 466, 468-69 (6th Cir. 1991)).  Plaintiffs

2    contend that Defendants artificially raised the over-order prices for raw milk.

3        Defendants do not dispute that they engaged in herd retirement.  Rather, they contend

4    that their conduct is immune from antitrust liability pursuant to Section 2 of the Capper-

5    Volstead Act, 7 U.S.C. § 292.  The Capper-Volstead Act, in conjunction with Section 6 of the

6    Clayton Act, 15 U.S.C. § 17, provides an exemption from liability under section 1 of the

7    Sherman Act, 15 U.S.C. § 1.  Whether Defendants' conduct is in fact immune is a merits

8    argument that Defendants do not raise, and the Court does not address, upon the present

9    motions.

10                                              **ANALYSIS**

11        Before the Court turns to the motion for class certification, the Court addresses

12   Defendants' challenge to Plaintiffs' expert, Dr. John M. Connor, based on *Daubert v. Merrell*

13   *Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597 (1993).  Under Federal Rule of Evidence 702,

14   "[a] witness who is qualified as an expert by knowledge, skill experience, training, or education

15   may testify in the form of an opinion or otherwise if," *inter alia*, "the testimony is the product

16   of reliable principles and methods."  Fed. R. Evid. 702.

17       It is well established that a court has a "gatekeeping function" to determine that

18   proposed expert testimony, whether it is based on scientific, technical or other "specialized

19   knowledge," is both relevant and reliable.  *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137,

20   141 (1999); *Daubert*, 509 U.S. at 597; *Estate of Barbarin v. Ashten-Johnson, Inc.*, – F.3d –,

21   2014 WL 129884, at *4 (9th Cir. Jan. 15, 2014).  This inquiry is a "flexible" one, and the Court

22   may consider such factors as whether the specialized knowledge or scientific or technical theory

23   or technique: (1) can be or has been tested; (2) has been subjected to peer review or publication;

24   (3) is subject to generally applicable standards or known error rates; and (4) is "generally

25   accepted" in the field of expertise.  *Kumho*, 526 U.S. at 151; *Daubert*, 509 U.S. at 592-94; *see*

26   *also United States v. Hankey*, 203 F.3d 1160, 1168 (9th Cir. 2000.)

27       Although the Court may exclude expert testimony, that is not always the appropriate

28   remedy.  "Vigorous cross-examination, presentation of contrary evidence, and careful

United States District Court

For the Northern District of California

3

**United States District Court**
For the Northern District of California

1    instruction on the burden of proof are the traditional and appropriate means of attacking shaky

2    but admissible evidence." *Daubert*, 509 U.S. at 596 (citing *Rock v. Arkansas,* 483 U.S. 44, 61

3    (1987)).  Upon review of the record, the Court cannot say that Dr. Connor's opinions are so

4    inherently unreliable that his testimony should be excluded, and, thus, the Court denies the

5    request to exclude him.

6          "Class certifications are governed by Federal Rule of Civil Procedure 23," and a

7    plaintiff seeking class certification bears the burden of "demonstrating that he has met each of

8    the four requirements of Rule 23(a) and at least one of the requirements of Rule 23(b)."  *Lozano*

9    *v. AT&T Wireless Servs., Inc.*, 504 F.3d 718, 724 (9th Cir. 2007); *see also Zinser v. Accufix*

10   *Research Institute, Inc.*, 253 F.3d 1180, 1186 (9th Cir.), *amended* 273 F.3d 1266 (9th Cir. 2001)

11   (trial court must conduct a "rigorous analysis" to determine whether the requirements of Rule

12   23 have been met).  "Rule 23 does not set forth a mere pleading standard.  A party seeking class

13   certification must affirmatively deonstrate his compliance with the Rule – that is, he must be

14   prepared to prove that there are in fact sufficiently numerous parties, common questions of law

15   or fact, etc."  *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011).  Further, "[c]lass

16   certification is not immutable, and class representative status could be withdrawn or modified if

17   at any time the representatives could no longer protect the interests of the class."  *Cummings v.*

18   *Connell*, 316 F.3d 886, 896 (9th Cir. 2003) (citing *Soc. Servs. Union, Local 535 v. County of*

19   *Santa Clara*, 609 F.2d 944, 948-49 (9th Cir. 1979)).

20          A.      **Threshold Issues: Ascertainability and Standing.**

21          As a threshold matter, and apart from the explicit requirements of Rule 23(a), the party

22   seeking class certification must demonstrate that an identifiable and ascertainable class exists.

23   *Mazur v. eBay Inc.*, 257 F.R.D. 563, 567 (N.D. Cal. 2009).  "'Although there is no explicit

24   requirement concerning the class definition in Fed. R. Civ. P. 23, courts have held that the class

25   must be adequately defined and clearly ascertainable before a class action may proceed.'"

26   *Schwartz v. Upper Deck Co.*, 183 F.R.D. 672, 679-80 (S.D. Cal. 1999) (quoting *Elliott v ITT*

27   *Corp*, 150 F.R.D. 569, 573-74 (N.D. Ill. 1992)).  "A class definition should be 'precise,

28   objective and presently ascertainable.'"  *Rodriguez v. Gates,* 2002 WL 1162675, at *8 (C.D.

United States District Court

For the Northern District of California

Cal. 2002) (quoting *O'Connor v. Boeing North American, Inc.*, 184 F.R.D. 311, 319 (C.D. Cal. 1998)); *see also* Manual for Complex Litigation, Fourth § 21.222 at 270-71 (2004).  While the identity of the class members need not be known at the time of certification, class membership must be clearly ascertainable.  *DeBremaecker v. Short*, 433 F.2d 733, 734 (5th Cir. 1970).  The class definition must be sufficiently definite so that it is administratively feasible to determine whether a particular person is a class member.  *See, e.g., Davoll v. Webb*, 160 F.R.D. 142, 144 (D. Colo. 1995).

"A class is ascertainable if it identifies a group of unnamed plaintiffs by describing a set of common characteristics sufficient to allow a member of that group to identify himself or herself as having a right to recover based on the description."  *Vietnam Veterans of America v. C.I.A.*, 288 F.R.D. 192, 211 (N.D. Cal. 2012) (citation omitted); *see also Yordi v. Plimus, Inc.*, 2013 WL 5832225, *2 (N.D. Cal. Oct. 29,. 2013); *Hanni v. Am. Airlines, Inc.*, 2010 WL 289297, *9 (N.D. Cal. Jan. 15, 2010).  Here, the class definition clearly defines the characteristics of a class member by providing a description of the allegedly offending products and the eligible dates of purchase.  Therefore, a prospective class member would have sufficient information to determine whether he or she was an indirect purchaser of milk and/or other fresh milk products during the class period.  Accordingly, the Court finds that Plaintiffs have set forth identifiable and ascertainable classes.

Standing is another threshold issue.  To demonstrate standing "named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent."  *Lewis v. Casey*, 518 U.S. 343, 347 (1996) (internal quotes omitted).  Moreover, at least one named plaintiff must have standing with respect to each claim the class representatives seek to bring.  *Griffin v. Dugger*, 823 F.2d 1476, 1483 (11th Cir. 1987) ("a claim cannot be asserted on behalf of a class unless at least one named plaintiff has suffered the injury that gives rise to that claim."); *see also In re Ditropan XL Antitrust Litigation*, 529 F. Supp. 2d 1098, 1107 (N.D. Cal. 2007); *In re Salomon Analyst Level 3 Litig.*, 350 F. Supp. 2d 477, 496 (S.D.N.Y. 2004); *In re Terazosin Hydrochloride Antitrust Litig.*, 160 F. Supp. 2d

1  1365, 1370-71 (S.D.Fla. 2001) (dismissing based for lack of standing the state law antitrust

2  claims in which none of the named plaintiffs resided or purchased the drug at issue).

3       Plaintiffs bear the burden of demonstrating standing.  *Lujan v. Defenders of Wildlife*,

4  504 U.S. 555, 561 (1992).  Defendants argue that Plaintiffs fail to demonstrate standing for the

5  class from West Virginia because there is no plaintiff from that state.  Plaintiffs do not contest

6  this argument.  Therefore, they have not met their burden to show standing to represent a class

7  from West Virginia.  Accordingly, the Court denies the motion for class certification with

8  respect to the class from West Virginia.

9       **B.**     **Rule 23(a) Requirements.**

10      Class certification is appropriate only if

11
12        (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are
13        typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.
14

15 Fed. R. Civ. P. 23(a).  As noted above, the Supreme Court has made clear that "Rule 23 does

16 not set forth a mere pleading standard.  A party seeking class certification must affirmatively

17 demonstrate his compliance with the Rule – that is, he must be prepared to prove that there are

18 in fact sufficiently numerous parties, common questions of law or fact, etc."  *Wal-Mart Stores*,

19 131 S. Ct. at 2551.  The class can be certified only if the court "is satisfied, after a rigorous

20 analysis, that the prerequisites of Rule 23(a) have been satisfied."  *General Telephone Co. of*

21 *Southwest v. Falcon*, 457 U.S. 147, 160-61 (1982).

22      The Supreme Court has noted that "[f]requently . . . 'rigorous analysis' will entail some

23 overlap with the merits of the plaintiff's underlying claim.  That cannot be helped."  *Wal-Mart*,

24 131 S. Ct. at 2551.  "The district court is required to examine the merits of the underlying claim

25 in this context, only inasmuch as it must determine whether common questions exist; not to

26 determine whether class members could actually prevail on the merits of their claims."  *Ellis v.*

27 *Costco Wholesale Corp.*, 657 F.3d 970, 983 n.8 (9th Cir. 2011) (citing *Wal-Mart*, 131 S. Ct. at

28 2552 n.6 (clarifying that Rule 23 does not authorize a preliminary inquiry into the merits of the

suit for purposes other than determining whether certification was proper)).  "To hold otherwise would turn class certification into a mini-trial."  *Ellis*, 657 at 983 n.8.

### 1.    Numerosity.

In order to meet their burden on Rule 23(a)'s "numerosity" requirement, Plaintiff must demonstrate that the proposed class is "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1); *see also Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998).  Although "[t]here is no absolute minimum number of plaintiffs necessary to demonstrate that the putative class is so numerous so as to render joinder impracticable[,] . . . [j]oinder has been deemed impracticable in cases involving as few as 25 class members. . . ." *Breeden v. Benchmark Lending Group, Inc.*, 229 F.R.D. 623, 628-29 (N.D. Cal. 2005) (internal citations omitted) (finding joinder was impractical where there were over 236 members in the putative class).  As another court in this district has recognized "a survey of representative cases indicates that, generally speaking, classes consisting of more than 75 members usually satisfy the numerosity requirement of Rule 23(a)(1)."  *Id.* (citing 7A Wright, Miller & Kane *Federal Practice and Procedure:* Civil 3d § 1762 (2005)).  In this case, Plaintiffs present evidence that there are approximately 46 million class members.  The Court finds that Plaintiffs have met their burden to show that the class is sufficiently numerous.

### 2.    Commonality, Typicality, Superiority, and Predominance.

Commonality requires that there be "questions of fact and law which are common to the class."  Fed. R. Civ. P. 23(a)(2).  "The commonality requirement serves chiefly two purposes: (1) ensuring that absentee members are fairly and adequately represented; and (2) ensuring practical and efficient case management."  *Rodriguez v. Hayes*, 591 F.3d 1105, 1122 (9th Cir. 2010) (internal quotation marks omitted).  Courts look for "shared legal issues or a common core of facts."  *Id.*  Where diverging facts underlie the individual claims of class members, courts consider whether the issues "at the heart" of those claims are common such that the class vehicle would "facilitate development of a uniform framework for analyzing" each class member's situation.  *Id.* at 1123.  The class claims "must depend on a common contention," which "must be of such a nature that it is capable of classwide resolution – which means that

United States District Court

For the Northern District of California

determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart*, 131 S. Ct. at 2551.  The commonality requirement has been construed permissively and is "less rigorous than the companion requirements of Rule 23(b)(3)." *Hanlon*, 150 F.3d at 1019.

Typicality requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3).  As with the commonality requirement, the typicality requirement is applied permissively.  *Hanlon*, 150 F.3d at 1020. "[R]epresentative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Id.*; *see also Lozano*, 504 F.3d at 734 ("Under Rule 23(a)(3) it is not necessary that all class members suffer the same injury as the class representative."); *Simpson v. Fireman's Fund Ins. Co.*, 231 F.R.D. 391, 396 (N.D. Cal. 2005) ("In determining whether typicality is met, the focus should be 'on the defendants' conduct and plaintiff's legal theory,' not the injury caused to the plaintiff.") (quoting *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992)).  Thus, typicality is "satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001) (quoting *Marisol v. Giuliani,* 126 F.3d 372, 376 (2nd Cir. 1997)).  Defendants do not contest that Plaintiffs have demonstrated typicality.

In order to certify a class under Rule 23(b)(3), Plaintiff must establish that "common questions . . . 'predominate over any questions affecting only individual members,'" and also must establish that class resolution is "'superior to other available methods for the fair and efficient adjudication of the controversy.'" *Hanlon*, 150 F.3d at 1022 (quoting Fed. R. Civ. P. 23(b)(3)).  "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623 (1997).  The focus is "on the relationship between the common and individual issues.  When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for

1    handling the dispute on a representative rather than on an individual basis." *Hanlon*, 150 F.3d

2    at 1022.

3         A plaintiff can satisfy the superiority requirement when he or she can show that "class-

4    wide litigation of common issues will reduce litigation costs and promote greater efficiency."

5    *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996). In order to make this

6    determination, the Court should consider the following factors: "the interest of members of the

7    class in individually controlling the prosecution or defense of separate actions; the extent and

8    nature of any litigation concerning the controversy already commenced by or against members

9    of the class; the desirability or undesirability of concentrating the litigation of the claims in the

10   particular forum; the difficulties likely to be encountered in the management of a class action."

11   Fed. R. Civ. P. 23(b)(3)(A)-(D).

12        Here, there is a key common question – whether Defendants violated the indirect

13   purchaser antitrust laws from the class states. Defendants argue that there is no common

14   question because the existence of the herd reduction program is undisputed. However,

15   Defendants do dispute liability. Accordingly, a key common legal question remains. *See Wal-*

16   *Mart*, 131 S. Ct. at 2551 (holding that "[e]ven a single [common] question will do," so long as

17   that question has the capacity to generate a common answer "apt to drive the resolution of the

18   litigation.") (internal quotation marks omitted).

19        Defendants also challenge Plaintiffs' ability to demonstrate that damages can be shown

20   by a reliable method using common proof. At the class certification stage, the Court must

21   determine whether Plaintiffs have shown "that there is a reasonable method for determining, on

22   a classwide basis, the antitrust impact's effects on the class members." *In re Cathode Ray Tube*

23   *(CRT) Antitrust Litig.*, 2013 WL 5391159, *5 (N.D. Cal. Sept. 24, 2013); *see also In re*

24   *Diamond Foods, Inc., Sec. Litig.*, 295 F.R.D. 240, 252 (N.D. Cal. 2013) ("Whether plaintiff will

25   ultimately prevail in proving damages is not necessary to determine at this stage. Instead, the

26   question for class certification is whether plaintiff has met its burden of establishing that

27   damages can be proven on a classwide basis."); *Chavez v. Blue Sky Natural Beverage Co.*, 268

28   F.R.D. 365, 379 (N.D. Cal. 2010) ("At class certification, plaintiff must present a likely method

United States District Court
For the Northern District of California

9

1    for determining class damages, though it is not necessary to show that his method will work

2    with certainty at this time.") (internal quotation marks and citation omitted).  "This is a question

3    of methodology, not merit." *In re CRT Antitrust Litig.*, 2013 WL 5391159, at \*5 (citing *In re*

4    *Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 2006 WL 1530166, \*9 (N.D. Cal.

5    June 5, 2006)).

6          Moreover, damages in antitrust cases need not be proven with exact certainty.  *See*

7    *Comcast Corp. v. Behrend*, 133 S.Ct. 1426, 1433 (2013) ("Calculations need not be exact . . .");

8    *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 123 (1969) ("[D]amages issues in

9    [antitrust] cases are rarely susceptible of the kind of concrete, detailed proof of injury which is

10   available in other contexts."); *J. Truett Payne Co. v. Chrysler Motors Corp.*, 451 U.S. 557, 566

11   (1981) (expressing "willingness to accept a degree of uncertainty" in antitrust damage proof

12   given that "[t]he vagaries of the marketplace usually deny us sure knowledge of what plaintiff's

13   situation would have been in the absence of the defendant's antitrust violation"); *Knutson v.*

14   *Daily Review, Inc.*, 548 F.2d 795, 811 (9th Cir.1976) (proof of damages is sufficient "if the

15   evidence show[s] the extent of the damages as a matter of just and reasonable inference,

16   although the result be only approximate") (citation omitted); *Moore v. James H. Matthews &*

17   *Co.*, 682 F.2d 830, 836 (9th Cir.1982) ("[A]n antitrust plaintiff is only obligated to provide the

18   trier-of-fact with some basis from which to estimate reasonably, and without undue speculation,

19   the damages flowing from the antitrust violations.") (citation omitted).

20         Upon a rigorous analysis, the Court finds that Plaintiffs have met their burden to

21   demonstrate damages from Defendants' alleged unlawful conduct may be calculated on a class-

22   wide basis.  Defendants contend that Plaintiffs' expert failed to consider important relevant

23   factors.  However, while the omission of variables from analysis "may render the analysis less

24   probative than it otherwise might be, it can hardly be said, absent some other infirmity, that an

25   analysis which accounts for the major factors must be considered unacceptable as evidence."

26   *Bazemore v. Friday*, 478 U.S. 385, 400 (1986) (internal quotation marks and citations omitted).

27   "In some cases , . . . the analysis may be 'so incomplete as to be inadmissible as irrelevant.'"

28   *Hemmings v. Tidyman's Inc.*, 285 F.3d 1174, 1188 (9th Cir. 2002) (quoting *Bazemore,* 478 U.S.

at 400 n. 10).  Upon review of the evidence and Defendants' arguments regarding Dr. Connor's expert reports, the Court finds that any failure to consider relevant factors goes to the weight of the evidence, as opposed to admissibility.

*Comcast* holds that "plaintiffs must be able to show that their damages stemmed from the defendant's actions that created the legal liability" *Leyva v. Medline Industries Inc.*, 716 F.3d 510, 514 (9th Cir. 2013) (citing *Comcast*, 133 S.Ct. at 1435.)  The Court had been concerned that Plaintiffs did not demonstrate an ability to prove damages that were linked to their theory of liability.  In their supplemental briefing, Plaintiffs clarified that although they are moving under state law, their theory is that Defendants engaged in a nationwide conspiracy. Moreover, they have demonstrated that, under the laws of the states in which they are moving, recovery from a nationwide antitrust conspiracy is allowed, so long as the effects are felt within the state. *See e.g.*, *RLH Indus., Inc. v. SBC Communications, Inc.*, 133 Cal. App. 4th 1277, 1281-82 (2005) ("the commerce clause does not bar application of California antitrust law to out-of-state anticompetitive conduct that causes injury in California.").  Plaintiffs' expert set forth a damages model that is capable of calculating the allegedly inflated prices that class members paid in each class state as a result of the nationwide conspiracy.

Defendants argue that the Commerce Clause prohibits Plaintiffs from seeking antitrust damages for conduct that occurs in non-class action states.  However, state indirect purchaser statutes are not preempted by federal antitrust laws.  *California v. ARC America Corp.*, 490 U.S. 93, 101 (1989).  State laws allowing indirect purchaser lawsuits "are consistent with the broad purposes of the federal antitrust laws: deterring anticompetitive conduct and ensuring the compensation of victims of that conduct." *Id*. at 102; *see also Knevelbaard Dairies v. Kraft Foods, Inc.*, 232 F.3d 979, 993-94 (9th Cir. 2000) (holding that California's application of its antitrust law to conduct that occurred in Wisconsin as well as California did not violate the Commerce Clause).  Moreover, "[w]here Congress has proscribed certain interstate commerce, Congress has determined that commerce is not in the national interest." *Pic-A-State PA, Inc. v. Commonwealth of Pennsylvania*, 42 F.3d 175, 179 (9th Cir. 1994).  If Congress has done so, "it does not offend the purpose of the Commerce Clause for states to discriminate or burden that

11

United States District Court
For the Northern District of California

1    commerce." *Id.* Here, Plaintiffs contend that Defendants' conduct violates the Sherman Act

2    and is not immune under the Capper-Volstead Act. Their state-law indirect purchaser claims

3    are consistent with the Sherman Act and therefore do not violate the Commerce Clause.

4          Therefore, the Court finds that Plaintiffs have demonstrated that common legal

5    questions predominate over individualized issues and that a class action would be a superior

6    method for resolving this litigation. Members of the proposed class likely do not possess an

7    interest in individually controlling the prosecution of separate actions as the cost of maintaining

8    a separate action would be prohibitive. *See, e.g., Perez v. Safety-Kleen Systems, Inc.*, 253

9    F.R.D. 508, 520 (N.D. Cal. 2008).

10              **3.      Adequacy of Representation.**

11         Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect

12   the interests of the class." Fed. R. Civ. P. 23(a)(4). "To satisfy constitutional due process

13   concerns, absent class members must be afforded adequate representation before entry of a

14   judgment which binds them." *Hanlon*, 150 F.3d at 1020. In order to determine whether the

15   adequacy prong is satisfied, courts consider the following two questions: "(1) [d]o the

16   representative plaintiffs and their counsel have any conflicts of interest with other class

17   members, and (2) will the representative plaintiffs and their counsel prosecute the action

18   vigorously on behalf of the class?" *Staton*, 327 F.3d at 957; *see also Fendler v. Westgate*

19   *California Corp.*, 527 F.2d 1168, 1170 (9th Cir. 1975) (noting that representative plaintiffs and

20   counsel also must have sufficient "zeal and competence" to protect the interests of the class).

21   "'[T]he adequacy-of-representation requirement is satisfied as long as one of the class

22   representatives is an adequate class representative.'" *Rodriguez v. West Publishing Co.*, 563

23   F.3d 948, 961 (9th Cir. 2009) (quoting *Local Joint Executive Bd. of Culinary/Bartender Trust*

24   *Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162 n.2 (9th Cir. 2001) (brackets added in

25   *West*)).

26         The Court concludes, based on the current record as presented, that Plaintiffs are

27   adequate class representatives and that Plaintiffs' counsel will vigorously prosecute this action

28   on behalf of the class.

**CONCLUSION**

For the reasons set forth above, the Court GRANTS IN PART and DENIES IN PART Plaintiffs' motion for class certification.  The Court DENIES Plaintiffs' motion with respect to the class action from West Virginia based on lack of standing, but GRANTS the remainder of Plaintiffs' motion for class certification.

**IT IS SO ORDERED.**

Dated: September 16, 2014



JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE