Timothy R. Hanigan (125791)
LANG, HANIGAN & CARVALHO, LLP
21550 Oxnard Street, Suite 760
Woodland Hills, California 91367
(818) 883-5644
trhanigan@gmail.com

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF CALIFORNIA
# OAKLAND DIVISION

| | |
|---|---|
| MATTHEW EDWARDS, et al., <br><br> Plaintiffs, <br><br> v. <br><br> NATIONAL MILK PRODUCERS FEDERATION, et al. <br><br> Defendants. | Case No. 11-CV-04766-JSW <br><br> [consolidated with 11-CV-04791-JSW And 11-CV-05253-JSW] <br><br> <u>CLASSS ACTION</u> <br><br> The Honorable Jeffrey S. White |

## OBJECTOR IRA CONNER ERWIN'S REPLY TO PLAINTIFFS' CONSOLIDATED RESPONSE TO OBJECTIONS

# Table of Contents

INTRODUCTION.................................................................................................... 1

I. THE BENCHMARK IS 25%, AND NOT ANY PERCENTAGE ABOVE............................................................................................................. 2

II. THE $30.2 MILLION SETTLEMENT BENEFIT FOR THE CLASS DOES NOT JUSTIFY ANY AMOUNT ABOVE THE BENCHMARK....................................................................................................... 3

III. CLASS COUNSEL IGNORE RELEVANT AUTHORITY AWARDING THE BENCHMARK OR LESS IN SIMILAR SETTLEMENTS................................................................................................... 5

IV. THE EXCESSIVE 2.7 MULTIPLIER CONFIRMS CLASS COUNSELS' $17.3 MILLION FEE REQUEST IS EXCESSIVE.................... 6

V. THIS COURT SHOULD NOT SIMPLY DEFER JUDICIAL ALLOCATION OF FEES. ..................................................................... 8

VI. CLASS COUNSELS' *AD HOMINEM* ATTACKS AGAINST MR. ERWIN'S ATTORNEYS SHOULD NOT DISTRACT THIS COURT FROM FULFILLING ITS FIDUCIARY OBLIGATION TO THE ABSENT CLASS MEMBERS........................................................... 9

VII. MR. BANDAS HAS REPRESENTED NUMEROUS CLIENTS WHO HAVE SUCCEEDED IN IMPROVING SETTLEMENTS. ........................ 12

CONCLUSION ..................................................................................................... 14

# Table of Authorities

**Cases**

*Blessing v. Sirius XM Radio, Inc.*, 2011 WL 5873383, No. 09 CV 10035(HB) (S.D.N.Y. Nov. 22, 2011) ............................................................... 11

*Corpac v. Rubin & Rothman, LLC,* 2012 WL 2923514, at *2-*3 (E.D.N.Y. July 19, 1012) ............................................................................................. 1, 12

*Cunha v. Hansen Nat. Corp.*, EDCV 08-1249-GW(JCX), 2015 WL 12697627 (C.D. Cal. Jan. 29, 2015) ............................................................ 3

*Dennis v. Kellogg Co.*, 697 F.3d 858 (9th Cir. 2012) ............................................ 13

*Dyer v. Wells Fargo, N.A.*, 303 F.R.D. 326 (N.D. Cal. 2014) ............................... 7

*Eubank v. Pella Corp.*, 753 F.3d 718 (7th Cir. 2014) ........................................... 12

*Fleury v. Richemont N.A., Inc.*, C-05-4525 EMC, 2008 WL 3287154 (N.D. Cal. Aug. 6, 2008) ............................................................................................... 8

*Four in One Co., Inc. v. S.K. Foods, L.P.*, 2:08-CV-3017 KJM EFB, 2014 WL 4078232 (E.D. Cal. Aug. 14, 2014) ................................................................ 7

*Hopson v. Hanesbrands Inc.*, CV-08-0844 EDL, 2009 WL 928133 (N.D. Cal. Apr. 3, 2009) ................................................................................................ 5

*In re "Agent Orange" Prods. Liab. Litig.*, 818 F.2d 216 (2d Cir. 1987 .................. 9

*In re Activision,* 723 F.Supp. 1373 (N.D. Cal. 1989) ............................................ 2

*In re Air Cargo Shipping Svcs. Antitrust Litig.*, 2010 WL 1049269, No. 06-MD-1775 (JG)(VVP) (E.D.N.Y. Mar. 22, 2010) .............................................. 12

*In re Baby Products Antitrust Litig.*, 708 F.3d 163 (3d Cir. 2013) ...................... 12

*In re Diet Drugs Prods. Liab. Litig.*, 401 F.3d 143, 173 (3d Cir. 2005)) (Ambro, J., concurring) ...................................................................................... 9

*In re Dry Max Pampers Litig.*, 724 F.3d 713, 717-18 (6th Cir. 2013) ................. 10

*In re Fine Paper Antitrust Litig.,* 751 F.2d 562 (3d Cir. 1984) ....................... 2, 12

*In re High Sulfur Content Gasoline Prods. Litig.*, 517 F.3d 220 (5th Cir. 2008) ............ 9

*In re Ikon Office Solutions, Inc.*, 194 F.R.D. 166 (E.D. Pa. 2000) ......................... 2

*In re Lawnmower Engine Horsepower Mktg. & Sales Practices Litig.*, 2010 WL 4630846, MDL No. 08-1999 (E.D. Wisc. Nov. 2, 2010) ............................ 12

*In re Natl. Football League Players Concussion Injury Litig.*, 15-2206, 2016 WL 1552205, at *29 (3d Cir. Apr. 18, 2016). ................................................... 14

*In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036 (N.D. Cal. 2008) .................................. 2

*In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934 (9th Cir. 2015) ............................ 3

*In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*, 12-4671-CV, 2016 WL 3563719 (2d Cir. June 30, 2016) ........................................................ 13

*In re Southwest Voucher Litigation*, 799 F.3d 701 (7th Cir. 2015) ...................................... 2, 10

*In re Trans Union Corp. Privacy Litig.*, 629 F.3d 741 (7th Cir. 2011) .................................. 11

*In re Warfarin Sodium Antitrust Litig.,* 391F.3d 516 (3d Cir. 2004) .................................... 5

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291 (9th Cir. 1994) ..................... 8

*Kakani v. Oracle Corp.*, 06-06493WHA, 2007 WL 4570190 (N.D. Cal. Dec. 21, 2007) (unpub.) ........................................................................................................... 8

*Kelly v. Wengler*, 822 F.3d 1085 (9th Cir. 2016) ................................................................. 8

*Litwin v. iRenew Bio Energy Sols., LLC*, 172 Cal. Rptr. 3d 328 (Cal. App. 2d Dist. 2014), ............................................................................................................... 13

*Malchman v. Davis*, 761 F.2d 89 (2d Cir. 1985) (Jon O. Newman, concurring), *cert. denied*, 475 U.S. 1143 (1986) .............................................................. 10

*Pallister v. Blue Cross and Blue Shield of Montana*, 285 P.3d 562 (Mont. 2012) .................. 10

*Piambino v. Bailey*, 757 F.2d 1112 (11th Cir. 1985) ............................................................. 10

*Rodriguez v. West Publishing Corp.*, 563 F.3d 948 (9th Cir. 2009) ..................................... 6-7

*See e.g., Redman v. RadioShack Corp.*, 768 F.3d 622 (7th Cir. 2014) .................................. 6

*Southwest Voucher*, 799 F.3d at 712 .................................................................................... 11

*True v. American Honda Motor Co.*, 749 F. Supp. 2d. 1052 (C.D. Cal. 2010) ................ 1, 11

*UFCW Loc. 880-Retail Food Employers Jt. Pension Fund v. Newmont Min. Corp.*, 352 Fed. Appx. 232 (10th Cir. 2009) ........................................................... 10

*Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294 (N.D. Cal. 1995) ................................. 7

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002) ................................................ 8

**Rules**

Fed. R. Civ. P. 23 ................................................................................................................ 10

# INTRODUCTION

Class counsel attempt to justify their requested $17.3 million in attorneys' fees by calling this settlement something it is not: extraordinary. Depending on which Plaintiffs' expert is believed, the cash that will actually be distributed to the class ($30.2 million) is 3% or 16% of the total class damages.

As Mr. Erwin's objection noted, many cases have held attorneys fees to the 25% benchmark or less based on similar, and in fact, better results. Class counsel should be limited to the 25% benchmark or less; or alternatively, no more than their lodestar, with the excess returned to the class.

Class counsels' response is to shoot the messenger. They label Mr. Erwin's attorneys "professional objectors," and attack the motivations behind the objection which the class notice specifically invited.

Yet, Mr. Erwin's attorney's representation of objectors in other class actions "has no greater bearing on the merits of the objection raised [in this class action] than a plaintiff's counsel's experience in filing class actions speaks to the merits of claims he brings." *True v. American Honda Motor Co.*, 749 F. Supp. 2d. 1052, 1079 (C.D. Cal. 2010); *see also Corpac v. Rubin & Rothman, LLC,* 2012 WL 2923514, at *2-*3 (E.D.N.Y. July 19, 1012) ("[t]he Court 'fail[s] to see how motives of [Objector], other than the obvious financial once of maximizing [his] recovery, would make any fact of consequence to the determination of reasonable fees, the amount of damages or the

restriction on pursuing future claims] more or less probable.'") (citing *In re Fine Paper Antitrust Litig.,* 751 F.2d 562, 587 (3d Cir. 1984)).

If anyone's motive should be examined, it is that of class counsel, who seek far in excess of the benchmark for, at best, modest results for the class. *See In re Southwest Voucher Litigation*, 799 F.3d 701, 712 (7th Cir. 2015) ("[j]udicial scrutiny of class action fee awards and class settlements more generally is based on the assumption that class counsel behave as economically rational actors who seek to serve their own interests first and foremost").

## I. The Benchmark is 25%, and Not Any Percentage Above.

Class counsel should not be awarded $17.3 million by confusing the applicable benchmark. It is 25%. Not somewhere between 20% and 33%.[1]

Class counsel attempt to muddy the waters, claiming most common fund cases exceed the benchmark.[2] That is only true in *securities* class actions. *See In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1046-47 (N.D. Cal. 2008) (citing *In re Activision,* 723 F.Supp. 1373, 1377–78 (N.D. Cal. 1989) (surveying <u>securities cases</u> nationwide and noting, "This court's review of recent reported cases discloses that nearly all common fund awards range around 30% ...."); *In re Ikon Office Solutions, Inc.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000) ("The median in class actions is approximately twenty-five percent, but awards of thirty percent are not uncommon <u>in securities class actions</u>.")); *see also*

---

[1] Plaintiff's Consolidated Response to Objections and Reply in Support of Motions for Final Approval and for Fees, Costs, and Service Awards, ECF Doc. 461, at 10.

[2] *Id.*

*Cunha v. Hansen Nat. Corp.*, EDCV 08-1249-GW(JCX), 2015 WL 12697627, at *6 (C.D. Cal. Jan. 29, 2015) ("The 25% figure is the benchmark in the Ninth Circuit. . . . Yet, there is reason to conclude that in most common fund cases the award actually *exceeds* that benchmark, at least in securities fraud cases.") (citations omitted). This case obviously does not fall into that unique category.

With this clear 25% benchmark in mind, this Court correctly observed that "class counsel . . . seek attorneys' fees **substantially** in excess of the Ninth Circuit's 'benchmark percentage' of 25%[.]" Order re Motion for Preliminary Approval of Class Action Settlement, ECF Doc. 426, at 3-4 (emphasis added) (citing *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 949 (9th Cir. 2015); *In re Bluetooth Headset Prods. Liability Litig.*, 654 F.3d 935, 942 (9th Cir. 2011)). To exceed the benchmark, and even more so, *substantially* exceed it as class counsel demand, there must be "special circumstances." *Bluetooth*, 654 F.3d at 942.

## II. The $30.2 Million Settlement Benefit for the Class Does Not Justify Any Amount Above the Benchmark.

No special circumstances are present. The net relief secured for the 46 million member class[3] - $30 million and no injunctive relief – is modest, not extraordinary, regardless of which of the plaintiffs' experts one chooses to believe. Under no circumstances, does it allow for any rise above the benchmark.

---

[3] Order Regarding Motion for Class Certification, ECF Doc. 266, at 7.

Class counsel now ask this Court to disregard their own expert economist Dr. John Connor's estimation of the class damages at more than $1 billion in favor of Dr. Sunding's $180 million estimate. In class counsels' view, Dr. Connor's preliminary report can be disregarded because it was "subject to further refinement."[4] Yet, in a subsequent report, after refinement, Dr. Connor confirmed damages exceed $1 billion:

> [t]he damages-estimation approach I adopted is a straightforward application of the time-honored before-and-after method of estimating overcharges. When combined with my work on milk pass-through rates (which verifies a large body of academic literature), I have created a reliable, *if conservative*, calculation of damages to the class.
>
> I reaffirm my conclusion that members of the proposed class were overcharged at least $1.013 billion to $1.177 billion because of the CWT HR Program.[5]

The $30.2 million settlement benefit for the class[6] is just 3% or less of the $1 billion in damages released. At best, that is questionable relief for the class.

Even if this Court disregards Dr. Connor's opinion in favor of Dr. Sunding's $180 million estimate, however, the $30.2 million settlement benefit to the class is still just 16% of the class damages.[7] No matter how the numbers are examined, this is not

---

[4] Plaintiffs' Consolidated Response to Objections and Reply in Support of Motions for Final Approval and for Fees, Costs, and Service Awards, ECF Doc. 461, at 11 (citing ECF 207, at ¶ 92).

[5] Revised Redacted Rebuttal Declaration of John M. Connor, PH.D., in Support of Class Certification, ECF Doc. 268, at 3 (emphasis added).

[6] $52,000,000-$17,333,333(attorneys' fees) - $2,396,886 (litigation expenses) - $2,000,000 (administrative expenses) = $30,269,781 for the class.

[7] Or, if the $52 million gross settlement figure is compared with the $180 million estimate, it is 28%.

an exceptional settlement.

**III. Class Counsel Ignore Relevant Authority Awarding the Benchmark or Less in Similar Settlements.**

Whether the settlement provides the class 3%, 16%, or even 30% of the total damages (taking class counsels' diminished damages estimation and including attorneys' fees and expenses in the settlement value), it is not close to justifying an upward departure from the benchmark. Class counsel have no response at all to multiple opinions cited in Mr. Erwin's objection confirming this fact.

For example, class counsel make no mention of *Hopson v. Hanesbrands Inc.*, CV-08-0844 EDL, 2009 WL 928133, at *7 (N.D. Cal. Apr. 3, 2009) (unpub.), where the settlement represented "39% of the maximum expected recovery" or 30% of the gross settlement if reduced by the amount of fees sought. Even though the class members in *Hopson* received a greater percentage of damages than in this case, the court awarded the 25% benchmark, supported by a "very modest" 1.02 lodestar multiplier[.]" *Id.*

Similarly, class counsel fail to distinguish in *In re Warfarin Sodium Antitrust Litig.,* 391F.3d 516, 538 (3d Cir. 2004), a $44.5 settlement in an antitrust class action amounted to 33% of the potential single damages. The *Warfarin* court permitted a fee award of 22.5% for this settlement. Yet, class counsel offer no response to either *Hopson* or *Warfarin*.

And while class counsel continue to rely on the "strikingly similar settlement,"[8] *Rodriguez v. West Publishing Corp.*, 563 F.3d 948 (9th Cir. 2009) for support of the settlement, they fail to mention (even though Mr. Erwin noted it in his objection)[9] that the fees in *Rodriguez* were capped at the 25% benchmark. *Id.* at 968. The *Rodriguez* Court gave no indication that the $49 million antitrust settlement compared with $158-$169 million in potential damages (a 28%-31% recovery) was, in any manner, an exceptional result warranting anything above the benchmark.[10]

The reason class counsel fails to address these opinions is obvious. There is no response. Courts recognize that the type of recovery achieved here, while arguably satisfying Rule 23's fairness criteria, will not support a fee above the benchmark.

Class counsel should be awarded the 25% benchmark or less. Under no circumstance should they be granted their request of $17.3 million, or 33% of the gross settlement fund.[11]

## IV. The Excessive 2.7 Multiplier Confirms Class Counsels' $17.3 Million Fee Request is Excessive.

Case law also rejects the notion that a 2.7 multiplier is reasonable considering

---

[8] Response, ECF Doc. 461, at 11.

[9] Objection, ECF Doc. 441, at 9.

[10] The court did not reach the issue of whether this amount was excessive, however, because it determined that it was necessary to reverse the award for the district court to consider an argument relating to incentive agreements for class representatives. *Rodriguez*, 563 F.3d at 968-69.

[11] Objector again urges that any percentage based calculation be done after reduction of costs of administration, here $2 million, and not before. *See e.g., Redman v. RadioShack Corp.*, 768 F.3d 622, 630 (7th Cir. 2014) ("[T]he ratio that is relevant to assessing the reasonableness of attorneys' fees that the parties agreed to is the ratio of (1) the fee to (2) the fee plus what the class members received").

the ordinary results here.[12] For example, Objector noted that in *Four in One Co., Inc. v. S.K. Foods, L.P.*, 2:08-CV-3017 KJM EFB, 2014 WL 4078232 (E.D. Cal. Aug. 14, 2014), the court approved a negative multiplier in a lodestar cross-check in a price-fixing antitrust class action. Class counsel have no response. And, the "strikingly similar settlement"[13] in *Rodriguez* allowed for no more than a 1.75 multiplier. *Rodriguez*, 563 F.3d 948.

Although Objector believes class counsel should be limited to their lodestar of $6.4 million, even applying a 1.75 multiplier as in *Rodriguez* would result in a far more reasonable $11.2 million. That fee would return $6.1 million to the class members.

Contrary to class counsels' suggestion, Mr. Erwin never "conceded that a multiplier is appropriate."[14] His objection repeatedly and consistently maintained that no multiplier is appropriate.[15]

Objector did note that many of the factors that class counsel incorrectly rely on

---

[12] Class counsel fail to mention that several of the opinions which they cite in support of a multiplier adhered to the 25% benchmark for fees. See e.g., *Dyer v. Wells Fargo, N.A.*, 303 F.R.D. 326, 334 (N.D. Cal. 2014) (awarding the benchmark 25% where the lodestar cross-check revealed a 2.83 multiplier*); Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995) (awarding the benchmark of 25% where class counsels' numbers revealed a 1.8 multiplier).

[13] Response, ECF Doc. 461, at 11.

[14] *Id.* at 15.

[15] Objection, ECF Doc. 441, at 3 ("Class counsels' request for a 2.7 multiplier is unwarranted, and would yield absurd billing rates of up to $2,600 per hour"); *id.* at 10 ("Awarding class counsel nearly three times these billing rates (using a 2.7 multiplier) would produce absurd results to the detriment of the class"); *id.* at 11 ("awarding anything beyond the lodestar would be excessive"); *id.* at 13 ("[w]hile any multiplier is improper, should this Court nevertheless entertain one, it should be far below 2.7"); *id.* at 14 ("[i]n no case, should this Court award class counsel the requested $17.3 million based on 33% with a 2.7 multiplier").

7

as grounds for a multiplier are already subsumed within their lodestar. *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 553 (2010) ("an enhancement may not be awarded on a factor that is subsumed in the lodestar calculation."); *Kelly v. Wengler*, 822 F.3d 1085, 1099 (9th Cir. 2016); *Fleury v. Richemont N.A., Inc.*, C-05-4525 EMC, 2008 WL 3287154, at *4 (N.D. Cal. Aug. 6, 2008); *Kakani v. Oracle Corp.*, 06-06493WHA, 2007 WL 4570190, at *3 (N.D. Cal. Dec. 21, 2007) (unpub.) ("[t]he factors that are presumably subsumed in the initial lodestar calculation include: (a) the novelty and complexity of the issues; (b) the quality of representation; (c) the special skill of counsel; and (d) the results obtained").

The fact that Objector observed that the Ninth Circuit has refused to extend the notion that risk multipliers are subsumed within the lodestar to common fund class action settlements,[16] despite the Supreme Court having never made this distinction, is anything but a concession that a multiplier is appropriate. As demonstrated, no multiplier is appropriate.

## V. This Court Should Not Simply Defer Judicial Allocation of Fees.

Class counsels' insist they be allowed to divvy a lump sum fee among themselves. Yet, in "a class action settlement, the district court has an independent duty under Federal Rule of Civil Procedure 23 to the class and the public to ensure that attorneys' fees are reasonable and divided up fairly among plaintiffs' counsel." *In*

---

[16] *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002) ("[t]he bar against risk multipliers in statutory fee cases does not apply to common fund cases") (citing *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1295-96 (9th Cir. 1994)).

8

re High Sulfur Content Gasoline Prods. Litig., 517 F.3d 220, 227–28 (5th Cir. 2008); *In re "Agent Orange" Prods. Liab. Litig.*, 818 F.2d 216, 223 (2d Cir. 1987).

Class counsel attempt to distinguish *High Sulfur* by noting that there are far fewer firms here. Nevertheless, the concerns articulated in *High Sulfur*, including inherent conflicts among the attorneys, are still present. The responsibility of ensuring that the fees paid from the class members' gross fund are distributed properly should not be left in the hands of lead counsel. *Id.* at 234-35 (citing *In re Diet Drugs Prods. Liab. Litig.*, 401 F.3d 143, 173 (3d Cir. 2005)) (Ambro, J., concurring)) ("They make recommendations on their own fees and thus have a financial interest in the outcome. How much deference is due the fox who recommends how to divvy up the chickens?"'). That is, the district court "must not … delegate that duty to the parties." *High Sulfur,* 517 F.3d at 228 (internal quotation omitted).

## VI. Class counsels' *Ad Hominem* Attacks against Mr. Erwin's Attorneys Should not Distract this Court from Fulfilling its Fiduciary Obligation to the Absent Class Members.

Class counsel seek to discredit Mr. Erwin's objection by disparaging his attorneys, in particular Mr. Bandas. While they have every right not to like Mr. Erwin's attorneys, the merits of the of Mr. Stewart's objections are at issue, not Mr. Bandas's prior representation of other class members.

Some courts, and obviously class counsel, have taken issue with objectors and their attorneys; yet, others have recognized the essential role they play in the approval

process of class action settlements. "Objectors can also "add value to the class-action settlement process by . . . preventing collusion between lead plaintiff and defendants." *UFCW Loc. 880-Retail Food Employers Jt. Pension Fund v. Newmont Min. Corp.*, 352 Fed. Appx. 232, 236 (10th Cir. 2009) (citation omitted); *see also* 2003 Committee Note, Rule 23(h) ("In some situations, there may be a basis for making an award to other counsel whose work produced a beneficial result for the class, such as . . . attorneys who represented objectors to a proposed settlement under Rule 23(e) or to the fee motion of Class Counsel"). Further, "[o]bjectors can encourage scrutiny of a proposed settlement and identify areas that need improvement. They can provide important information regarding the fairness, adequacy, and reasonableness of the settlement terms." *Pallister v. Blue Cross and Blue Shield of Montana*, 285 P.3d 562, 568 (Mont. 2012).

In the context of a class action settlement, it is axiomatic that the defendant is indifferent as to the allocation of any settlement payments between the class and class counsel. *See, eg., Malchman v. Davis*, 761 F.2d 893, 908 (2d Cir. 1985) (Jon O. Newman, concurring), *cert. denied*, 475 U.S. 1143 (1986); *In re Dry Max Pampers Litig.*, 724 F.3d 713, 717-18 (6th Cir. 2013). A settling defendant only cares about its total settlement payments and keeping them as low as possible. *In re Southwest Voucher Litigation*, 799 F.3d 701, 712 (7th Cir. 2015); *Piambino v. Bailey*, 757 F.2d 1112, 1139 (11th Cir. 1985) ("*Piambino II*").

At the same time, class counsel have a natural incentive to enrich themselves at the expense of the unnamed members of the class. *See Southwest Voucher*, 799 F.3d at 712 ("[j]udicial scrutiny of class action fee awards and class settlements more generally is based on the assumption that class counsel behave as economically rational actors who seek to serve their own interests first and foremost"). Because objectors may pose a risk to class counsels' fees, however, "class action lawyers may try to fend off interlopers who oppose a proposed settlement as insufficiently generous to the class[.]" *In re Trans Union Corp. Privacy Litig.*, 629 F.3d 741, 743 (7th Cir. 2011) (Posner, J.). These tactics should be curtailed – objectors "prevent[] cozy deals that favor class lawyers and defendants at the expense of class members. . . ." *Id.*

In this context, Mr. Bandas' representation of objectors in other class actions "has no greater bearing on the merits of the objection raised [in this class action] than a plaintiff's counsel's experience in filing class actions speaks to the merits of claims he brings." *True v. American Honda Motor Co.*, 749 F. Supp. 2d. 1052, 1079 (C.D. Cal. 2010). Class counsels' objective is for the Court to prejudge Mr. Stewart's objection based on outcomes in other class actions involving their attorney. However, "[m]erely characterizing some of the attorneys as 'professional objectors' without specifying what, exactly, they have done that is either in bad faith or vexatious, is not enough." *Blessing v. Sirius XM Radio, Inc.*, 2011 WL 5873383, No. 09 CV 10035(HB) (S.D.N.Y. Nov. 22, 2011); *see also In re Lawnmower Engine Horsepower Mktg. & Sales Practices Litig.*,

2010 WL 4630846, MDL No. 08-1999 (E.D. Wisc. Nov. 2, 2010); *In re Air Cargo Shipping Svcs. Antitrust Litig.*, 2010 WL 1049269, No. 06-MD-1775 (JG)(VVP) (E.D.N.Y. Mar. 22, 2010). Other courts have explicitly held that the motive of objectors or their counsel is simply not relevant to the merits of an objection. *See, e.g., Corpac v. Rubin & Rothman, LLC,* 2012 WL 2923514, at *2-*3 (E.D.N.Y. July 19, 1012) ("[t]he Court 'fail[s] to see how motives of [Objector], other than the obvious financial once of maximizing [his] recovery, would make any fact of consequence to the determination of reasonable fees, the amount of damages or the restriction on pursuing future claims] more or less probable.'") (citing *In re Fine Paper Antitrust Litig.,* 751 F.2d 562, 587 (3d Cir. 1984)).

It is neither logically nor legally permissible to conclude that an objection is valid or invalid from outcomes in other cases, especially when, as with the clients of Mr. Bandas, those outcomes are mixed. Only the merits of the objections should be of concern to the Court and Class Counsel.

### VII. Mr. Bandas Has Represented Numerous Clients Who Have Succeeded in Improving Settlements.

Since Class Counsel raised the issue, however, it should be noted that Mr. Bandas' clients have been successful in improving class action settlements. *See, e.g., Eubank v. Pella Corp.*, 753 F.3d 718 (7th Cir. 2014) ("The judgment [approving the settlement] is reversed and the case remanded for further proceedings"); *In re Baby Products Antitrust Litig.,* 708 F.3d 163, 181-82 (3d Cir. 2013) ("We vacate the District

12

Court's orders approving settlement and the fund allocation plan[;] "[w]e vacate the Court's order awarding attorneys' fees and costs because this award was based on the now-vacated settlement"); *Dennis v. Kellogg Co.*, 697 F.3d 858, 868 (9th Cir. 2012) ("we reverse the district court's order approving the settlement and dismissing the case, vacate the judgment and award of attorneys' fees, and remand for further proceedings"); *Litwin v. iRenew Bio Energy Sols., LLC*, 172 Cal. Rptr. 3d 328, 333 (Cal. App. 2d Dist. 2014), *as modified* (May 29, 2014) (in a case in which Mr. Bandas represented the objector in the lower court, the "the order granting final approval of the settlement must be reversed").

Most recently on June 30, 2016, in an opinion issued by the Second Circuit Court of Appeals, Mr. Bandas' client was part of an effort that overturned unfair settlement. *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*, 12-4671-CV, 2016 WL 3563719, at *12 (2d Cir. June 30, 2016) ("we vacate the district court's certification of the class, reverse approval of the settlement, and remand for further proceedings not inconsistent with this opinion"). Another client recently prevailed in reducing Class Counsels' attorneys' fees by $1.2 million, which resulted in a direct benefit to the class in *JPMorgan Chase Bank*, No. SA-14-CA-00912-FB, Docs. 85, 93, 94 (W.D. Tex. June 20, 2016).

Even in a recent appeal in which Objector's counsel represented an objector who lost, the Third Circuit nevertheless commended the objectors as "well-intentioned in making thoughtful arguments against certification of the class and

13

approval of this settlement. . . . They aim to ensure that the claims of retired players are not given up in exchange for anything less than a generous settlement agreement. . . ." *In re Natl. Football League Players Concussion Injury Litig.*, 15-2206, 2016 WL 1552205, at *29 (3d Cir. Apr. 18, 2016).

## Conclusion

This is not an extraordinary settlement allowing for an extraordinary award of $17 million in attorneys' fees. The benchmark for fees in the Ninth Circuit is 25% and there is no reason to exceed it. If anything, given the modest settlement relative to the tremendous damages released by the class, fees should fall below 25%. Alternatively, class counsel should be limited to their lodestar.

Objector thus finds nothing in class counsels' response that diminishes his objection in any respect, and reiterates the objection and relief requested therein with even greater confidence.

DATED: December 9, 2016

Respectfully submitted,
/s/ *Timothy R. Hanigan*
Timothy R. Hanigan (125791)
LANG, HANIGAN & CARVALHO, LLP,
21550 Oxnard Street, Suite 760
Woodland Hills, California 91367
(818) 883-5644
trhanigan@gmail.com

Attorney for Objector/Class Member

## Certificate of Service

The undersigned certifies that today he filed the foregoing Objection and associated declaration on ECF which will send electronic notification to all attorneys registered for ECF-filing.

DATED: December 9, 2016

>/s/ *Timothy R. Hanigan*
>Timothy R. Hanigan