UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MATTHEW EDWARDS, et al.,

            Plaintiffs,

    v.

NATIONAL MILK PRODUCERS
FEDERATION, et al.,

         Defendants.

Case No. 11-cv-04766-JSW

[consolidated with 11-CV-04791-JSW
and 11-CV-05253-JSW]

**ORDER RULING ON OBJECTIONS TO
CLASS ACTION SETTLEMENT;
GRANTING IN PART MOTION FOR
ATTORNEYS' FEES, COSTS, AND
INCENTIVE AWARDS; AND RULING
ON MOTIONS TO SUPPRESS,
UNSEAL, AND STRIKE**

Re: Dkt. Nos. 436, 453, 455, 466

Now pending is Plaintiffs' motion for attorneys' fees, costs, and incentive awards. Eight objectors have filed objections to proposed settlement of this antitrust class action and/or to the motion for attorney's fees, costs, and incentive awards. In this order, the Court rules on those objections and on all pending motions. The Court has considered the parties' papers, the objections received, the responses to those objections, relevant legal authority, and the record in this case. The Court also held a final fairness hearing on December 16, 2016, at which the Court heard argument from counsel for the parties and from three of the objectors. The other five objectors did not appear at the hearing.

For the reasons set forth in this order, the Court OVERRULES the objections received except to the extent that they generally object to the request for attorneys' fees of one third of the settlement fund as too high, consistent with this Court's analysis and in the exercise of discretion. The Court GRANTS IN PART Plaintiffs' motion for attorneys' fees, costs, and incentive awards. The Court also DENIES a motion to suppress and a motion to unseal records filed by pro se Objector Christopher Andrews and GRANTS Plaintiffs' motion to strike Objector Conner Erwin's

1 | reply in support of his objections.  The Court will grant Plaintiffs' pending motion for final

2 | approval of the class action settlement by separate order.

3 | **ANALYSIS**

4 | **A.      Motion to Suppress**

5 | Christopher Andrews filed pro se objections to the settlement and the motion for fees,

6 | costs, and incentive awards.  (Dkt. Nos. 432, 446, 450, 454.)  Class counsel deposed him on

7 | November 1, 2016.  (Dec. 2, 2016 Decl. of Elaine T. Byzewski, Ex. 8.)  Andrews moves to

8 | suppress the deposition under Federal Rules of Civil Procedure 32(d)(4) as not in compliance with

9 | Federal Rule of Civil Procedure 28.  (Dkt. No. 455.)  Andrews asserts that the deposition was

10 | plagued by procedural errors and also objects to the portion of the deposition that was focused on

11 | his objections in other cases.  He request that the Court strike or suppress the deposition, order all

12 | copies destroyed, and order that the class not be required to pay for the costs of taking the

13 | deposition.

14 | The Court denies the motion to suppress the deposition.  The Court has reviewed the

15 | excerpts that were provided.  It was not unreasonable for class counsel to take the deposition and

16 | the conduct of the deposition appears in compliance with the Federal Rules.  However, the Court

17 | accords limited weight to the deposition testimony.  As explained at the final approval hearing, the

18 | Court's primary focus in ruling on the objections to the class settlement is on the merit, if any, of

19 | the objections themselves, not on whether a given objector is a "serial" objector.

20 | **B.      Motion to Strike Objector Erwin's Reply**

21 | On December 9, 2016, counseled Objector Conner Erwin filed a reply in support of his

22 | objections to the pending motions for final approval and for attorney fees, costs, and incentive

23 | awards.  (Dkt. No. 463.)  On December 12, 2016, Plaintiffs filed an administrative motion to strike

24 | Erwin's reply.  (Dkt. No. 466.)

25 | The Court admonishes Plaintiffs' counsel for failing to seek a stipulation or contact

26 | Erwin's counsel in any way before filing the motion as required by Civil Local Rule 7-11(a) .  The

27 | Court is not persuaded that class counsel did not even have time to pick up the telephone to try to

28 | reach Erwin's counsel before filing the motion to strike.

United States District Court
Northern District of California

1        As Plaintiffs note, however, Erwin's reply was not permitted by the schedule set by the

2   Court, and was not accompanied by a motion for leave.  Moreover, after the motion to strike was

3   filed, Erwin neither opposed it nor filed a motion for leave to file his reply.  In light of Erwin's

4   failure to respond to the motion, the Court will not deny it solely because of class counsel's failure

5   to meet and confer before filing it.  The Court grants the unopposed motion to strike.

6   **C.**      **Objections to Final Approval of Class Action Settlement**

7        The Court's review of the proposed class action settlement is governed by Rule 23(e) of

8   the Federal Rules of Civil Procedure.  That rule generally requires the Court "to determine

9   whether a proposed settlement is fundamentally fair, adequate, and reasonable." *Hanlon v.*

10  *Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) (citing *Class Plaintiffs v. City of Seattle*,

11  955 F.2d 1268, 1276 (9th Cir. 1992)).  "It is the settlement taken as a whole, rather than the

12  individual component parts, that must be examined for overall fairness." *Id.* (citing *Officers for*

13  *Justice v. Civil Serv. Comm'n of San Francisco*, 688 F.2d 615, 628 (9th Cir. 1982)).  In exercising

14  its discretion, the Court balances the following non-exhaustive factors to evaluate the fairness of

15  the proposed settlement: "the strength of the plaintiffs' case; the risk, expense, complexity, and

16  likely duration of further litigation; the risk of maintaining class action status throughout the trial;

17  the amount offered in settlement; the extent of discovery completed and the stage of the

18  proceedings; the experience and views of counsel; the presence of a governmental participant; and

19  the reaction of the class members to the proposed settlement." *Id.* (citing *Torrisi v. Tucson Elec.*

20  *Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993)).

21       **1.**      **Settlement Amount**

22       Objectors Michael Antonio "Tony" O'Brian and Andrews object to the settlement amount

23  as insufficient, and Objector Erwin objects to the calculation of Plaintiffs' attorneys' fees based on

24  the settlement amount.  Those objectors contend that Dr. Scott Brown and Dr. John Connor

25  estimated higher damages from Defendants' actions than did Plaintiffs' ultimate damages expert

26  for trial, Dr. David L. Sunding.  However, "it is the parties themselves, as opposed to the court or

27  the objectors, who are in the best position to assess whether a settlement fairly reflects their

28  expected outcome in litigation. *See In re Google Referrer Header Privacy Litig.*, 87 F. Supp. 3d

United States District Court
Northern District of California

United States District Court
Northern District of California

1122, 1137 (N.D. Cal. 2015) (*citing In re Pac. Ents. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995)). The Court overrules these objections.

The Court finds the objectors' reliance on the pre-litigation analysis of Defendants' consultant Dr. Brown unpersuasive. Dr. Brown's estimate at that time did not take into account: (1) that the filed-rate doctrine limits recovery to artificial increases to the over-order premium, which is a small fraction of the overall milk price; (2) that many states do not permit indirect purchaser actions; or (3) that the states have different antitrust immunity statutes. Likewise, the Objectors provide no basis to rely on Dr. John Connor's preliminary class certification analysis in assessing the value of the settlement to the class, or to use that number to reduce the reasonableness of Plaintiffs' requested attorneys' fees.

Plaintiffs' damages expert for trial was Dr. Sunding, who estimated class damages to be $181 million. Dr. Sunding is reputable economist. The Court does not credit the implausible suggestion that either he or Plaintiffs' counsel essentially lowballed the damages estimate for the purpose of summary judgment and trial so that Plaintiffs could claim a greater percentage recovery for the class in the event of a settlement. If Dr. Sunding's damages calculation was flawed, it was not by being too low; indeed, at the time of settlement it was under attack in Defendants' pending *Daubert* motion. The parties vigorously contested whether Dr. Sunding's damages estimate was too high; the record at the time of summary judgment did not reasonably support an even higher damages number.

The Court also overrules O'Brian's and Joshua D. Holyoak's objections to the calculation of the settlement fund (and, accordingly, the attorneys' fees) based on the untrebled estimated damages of $181 million. *See Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 964-65 (9th Cir. 2009) ("courts do not traditionally factor treble damages into the calculus for determining a reasonable settlement value"). The $52 million settlement delivers almost 30% of the untrebled value of the case to class members, a substantial and fair figure especially in light of the risks and complexity presented by the pending motions and upcoming trial. The Ninth Circuit has characterized a similar fund in an antitrust settlement as "fair and reasonable no matter how you slice it." *Id*. This Court comes to the same conclusion here.

United States District Court
Northern District of California

1    The Court also overrules O'Brian's objection that the provision of cash value via a grocery

2    loyalty card is a coupon settlement under CAFA, reducing the estimated value of the settlement.

3    *See In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 951-52 (9th Cir. 2015) ("settlement

4    giv[ing] class members $12 to spend on any item carried on the website of a giant, low-cost

5    retailer . . . does not constitute a 'coupon settlement' within the meaning of CAFA"); *see also id.*

6    at 951 (collecting cases).  Plaintiffs have documented their intent to exhaust funds in the first

7    round of cash distribution to avoid the administrative expense of a second round loyalty card

8    distribution, so no coupon settlement is at issue in this case.

9           **2.     Settlement Class Definition and Release**

10   The Court overrules the objection of Holyoak that the definition of the certified classes

11   runs through the present because the end date is effectively supplied by the settlement agreement.

12   The release has a temporal limitation through "the date of execution of this Agreement," which

13   was August 12, 2016.

14   O'Brian objects to the breadth of the release as failing to track the allegations of the

15   complaint.  The Court overrules this objection because it finds that the release does adequately

16   track the allegations of the operative complaint, and is not materially broader than the bar that

17   would be provided by doctrines of res judicata and collateral estoppel.  At the final approval

18   hearing, the Court questioned counsel for Plaintiffs and Defendants regarding the breadth of the

19   release, and counsel represented that the release was not intended to foreclose claims unrelated to

20   the antitrust claims in this case, such as worker's compensation claims or products liability claims

21   that had to do with the dairy industry and overlapped tangentially with the facts at issue in this

22   case.  (December 16, 2016 Tr. at 55-58.)  The Court's finding on this point is reinforced by the

23   fact that the release was limited in time and that no objector identified any lawsuit pending during

24   the relevant time that would be precluded by the release.

25   The Court overrules the objection of Andrews that the claims form does not include the

26   release of claims, because the class notice does include that information and was posted on the

27   same website as the claims form.

28   The Court also overrules the objection of Andrews that Clayton Act claims are being

released although never pled.  (Andrews Obj. at 21-22.)  This objection is based on a misunderstanding of the language of the settlement agreement, which actually provides that Defendants reserve their defenses based on the Clayton Act.

Finally, at the hearing, O'Brian withdrew his unfounded objection that this is a pre-certification settlement.

### 3.   Class Notice

In granting preliminary approval, the Court already "approve[d], as to form and content, the notice of the proposed settlement."  (Dkt. No. 430 at 2.)  The notice was posted and has resulted in more than 3.8 million claims, which is more than 5 percent of the estimated 73 million class members.  Although these numbers seem low, in fact, the claims rate has been relatively good, supporting the Court's finding that the form of notice and the notice procedure were reasonable and fair.  (Dkt. 480-1 ¶ 3.)

Andrews objects that an "estimate of his individual damages" is missing from the class notice.  Other information posted on the class website, including the preliminary approval motion, provides this information sufficiently, however, as Andrews acknowledges.  The Court therefore overrules this objection. *See, e.g.*, *Online DVD*, 779 F.3d at 946 (rejecting similar objection that class notice did not disclose "what cost an average claimant had incurred due to the anti-competitive conduct at issue").

The Court likewise overrules O'Brian's objection that the notice did not provide the amount claimants would be eligible to receive.  This information would have been difficult to provide with any accuracy with the class notice in a claimant-fund-sharing settlement, where the amount is driven by the number of class members making claims.  *See id.* (rejecting similar objection that the "notice was deficient for failing to provide an estimate as to how much of an award each claimant would receive.").  Additionally, once a substantial number of claims had been filed, class counsel updated the class website to provide an approximate estimate of the amount that claimants would be eligible to receive, depending on the number of further claims filed.  (Dkt. No. 480.)

The Court overrules Andrews's objection that notice was not provided in Spanish because

United States District Court
Northern District of California

1    a toll-free automated telephone support line did provide notice in both English and Spanish.  The

2    Court also overrules Andrews's other pro se objections to the notice process, which are conclusory

3    and do not give adequate weight to the extensive declarations submitted by Plaintiffs regarding the

4    design and execution of the class notice.  The Court rejects class counsel's suggestion that the

5    Court should disregard some of Andrews's pro se objections as untimely, however; in the exercise

6    of discretion, the Court has considered all of Andrews's objections on the merits and overruled

7    them.

8              4.       **Plan of Allocation**

9              Approving a plan for the allocation of a class settlement fund is governed by the same

10   legal standard that applies to the approval of the settlement terms: the distribution plan must be

11   "fair, reasonable and adequate."  *In re Citric Acid Antitrust Litig.*, 145 F. Supp. 2d 1152, 1154

12   (N.D. Cal. 2001) (citations omitted).  The Court has reviewed the record and questioned Plaintiffs

13   about the plan of allocation at the final approval hearing.  The Court is satisfied that the plan is

14   fair, reasonable, and adequate and combines ease of use, accessibility and cost-effectiveness as

15   well as any plan could for a class of this size.  The claims process is straightforward and requires

16   only an email address; class members will receive a fixed cash distribution into an online account

17   of their choice without proof of purchase.  The distribution of funds will be based on the number

18   of valid claims filed, with the goal of the approximate *pro rata* distribution being to achieve a

19   complete exhaustion of funds, and avoid the need for any follow-up coupon or *cy pres*

20   distribution.

21             The Court overrules O'Brian's objection that the class actually contains two adversarial

22   subclasses, which were improperly represented by the same counsel.  The two fixed distribution

23   amounts accurately reflect the nature of the classes certified by this Court.  The two levels of claim

24   amounts for normal household purchases and entities making larger purchases was reasonably

25   calculated based on the difference in the size of purchases between the institutional class

26   representative and the individual class representatives.  (Dkt. No. 472.)  "It is reasonable to

27   allocate the settlement funds to class members based on the extent of their injuries or the strength

28   of their claims on the merits."  *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1045 (N.D.

Cal. 2008); *see also Maine State Ret. Sys. v. Countrywide Fin. Corp.*, No. 2:10-cv-00302 MRP, 2013 WL 6577020, at \*17 (C.D. Cal. Dec. 5, 2013) ("also not every distinction among class members requires the creation of a subclass").

O'Brian also objects that the distribution into online accounts disadvantages poorer class members who may be less likely to have such accounts.  The Court considered the same issue in connection with class notice, because poorer class members may not have Internet access at all.  However, no perfect system appears possible in this case; nor does the Court require absolute perfection.  Poorer class members also may not have checking accounts, as O'Brian himself acknowledges.  Plaintiffs have designed a fair, reasonable, and adequate plan of allocation that combines reasonable cost effectiveness with the ability to reach a high number of class members.  The relatively high number of claims indicates that the plan's ease of use outweighs its disadvantages.

Finally, Andrews objects "to the entire concept" of *cy pres* distribution."  The Court overrules this objection because the plan of allocation is designed to avoid the necessity of a *cy pres* distribution.  *See Rodriguez*, 563 F.3d at 966 (declining to consider the propriety of *cy pres* because "the fund in this case may well be depleted before *cy pres* kicks in"); *see also Lane v. Facebook, Inc.*, 696 F.3d 811, 821 (9th Cir. 2012) ("The *cy pres* remedy the settling parties here have devised bears a direct and substantial nexus to the interests of absent class members and thus properly provides for the 'next best distribution' to the class.").

### 5.     Motion to Unseal Records and Objections to Sealed Documents

Andrews filed a motion to unseal records and also includes in his objections the contention that documents were improperly hidden from the class.  O'Brian likewise objects to the sealed documents in this case.  Having overseen the litigation and ruled on numerous motions to seal, the Court overrules these objections and denies Andrews's motion to unseal records.  The protective order in this case complies with governing law, including the rigorous civil local rule regarding how to file sealed documents.  As is usual in litigation of this nature, Defendants have sought to protect their proprietary information while Plaintiffs have routinely opposed motions to seal, and the Court has ruled on such motions, requiring that documents be redacted narrowly rather than

sealed in their entirety.  None of the briefs or expert reports remains sealed in its entirety, and only a small percentage of the exhibits filed is filed under seal.  More than adequate information is available to the class members (and to the public) to assess the evidence in the case and the fairness of the settlement.

### 6.      Claims Administration

The Court overrules Objector Pamela A. Sweeney's suggestion that a portion of class counsel's fee should be withheld until claims administration and distribution are complete.  Class counsel is an experienced and well-respected firm and the Court finds that no such measure is necessary to ensure its compliance with the settlement agreement and the Court's orders.

### 7.      Other Objections

#### a.      Christopher Andrews

The Court overrules Andrews's remaining objections.  Andrews mistakenly objects that counsel did not know the estimated number of class members when they settled the case, but in fact, class counsel had to estimate this number in connection with notice of class action certification.  Plaintiffs' estimate of the class size at that time was consistent with their estimate at the time of settlement.  (*E.g.*, Dkt. No. 306-1.)

Andrews is also incorrect in his statement that the total estimated class damages were not disclosed until after he filed his objection.  This information was included in the motion for preliminary approval, as well as in the various other documents.

The Court overrules the objection that the date for filing the fee motion was not included in the class notice because that information was specified in the Court's order granting preliminary approval, which was available to the class on the to the case website created for settlement notice.

Finally, the Court overrules the objection that the Court should disregard the small number of objectors because not all objectors are capable of objecting as articulately as Andrews. Andrews has provided no reason for the Court to conclude that the class members in this case, once notified, are less capable of objecting than class members in other cases.  The Court has approved the notice procedure.  Ultimately, more than 3.8 million class members filed claims.  In light of this substantial number, the fact that only one class member opted out and eight objected

9

United States District Court
Northern District of California

1    weighs in favor of settlement approval.  *See Rodriguez*, 563 F.3d at 967.

2         The Court notes that Andrews has withdrawn his objection that the claim form did not

3    require signature under penalty of perjury.

4                    **b.      Thomas M. Monteith**

5         The Court overrules Thomas M. Monteith's objection that the Capper-Volstead Act

6    provides defendants with antitrust immunity, and therefore Defendants should win.  Monteith

7    states that he is both a consumer and a dairy farmer, but this objection appears motivated to protect

8    dairy farmers, not consumers.  The Court's role is to ensure that the settlement is fair to the class,

9    not to protect Defendants.

10                   **c.      Susan Smythe**

11        Susan Smythe's objections are threefold.  First, because the case was originally

12   investigated by Compassion Over Killing, an animal protection organization promoting veganism

13   among other goals, Smythe questions whether all the named plaintiffs are dairy consumers.

14   Plaintiffs have confirmed that they are.  (Dkt. No. 288 at ¶¶ 24-41.)  Second, Smythe objects that

15   the settlement does not address the herd retirements, which will "remain intact into the future."

16   Actually, as is alleged in the Third Amended Consolidated Class Action Complaint, Defendants

17   ceased the herd retirements in 2010.  Finally, Smythe objects that the settlement does not provide

18   for "a new program to encourage, fund, and foster small local dairy producers."  But this Court's

19   role is not to examine whether a settlement "could have been better by providing different or

20   additional relief."  *Ross v. Trex Co., Inc.*, No. 09-CV-00670-JSW, 2013 WL 6622919, at *4 (N.D.

21   Cal. Dec. 16, 2013).  As the Ninth Circuit has made clear, the Court's inquiry "is not whether the

22   final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from

23   collusion."  *Hanlon*, 150 F.3d at 1027.  Accordingly, the Court overrules Smythe's objections.

24                   **d.      Derek England**

25        Derek England objects that the settlement does not include injunctive relief.  In particular,

26   he contends that it allows the National Milk Producers Federation to fund the settlement through a

27   fee collection program that is implemented through cooperative block voting, disadvantaging

28   small farmers.  As discussed in connection with the Monteith and Smythe objections, however,

this Court's role is neither to protect Defendants nor to consider whether the settlement could be improved with different or better relief.  Accordingly, the Court also overrules England's objections.

Having fully considered the objections, and reviewing the settlement as a whole, the Court finds that the settlement is fundamentally fair, adequate, and reasonable in light of the high risks, expenses, and complexity of further litigation.  The Court also considers as favorable the reaction of the class, with eight objectors and one opt out compared to more than 3.8 million claims.  The Court shall set forth further analysis and grant Plaintiffs' pending motion for final approval of the class action settlement by separate order.

**D.       Attorney's Fees and Objections to the Fee Award**

Under Rule 23(h), in a certified class action, "the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement."  Fed. R. Civ. P. 23(h).  Plaintiffs agreed that their attorneys could seek fees from the recovery in an amount to be approved by the Court.  (Byszewski Decl. ¶ 32.)  This reflects the common fund doctrine, which also provides a basis in law for a reasonable award of attorneys' fees.  The United States Supreme Court "has recognized consistently that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole."  *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980).  And the Court explains that a district court's "[j]urisdiction over the fund involved in the litigation allows a court to prevent . . . inequity by assessing attorney's fees against the entire fund, thus spreading fees proportionately among those benefited by the suit."  *Id.*

In the Ninth Circuit, there are two primary methods of calculating attorneys' fees in making an award under Rule 23(h): lodestar and percentage of recovery.  In a common fund case, a district court has the discretion to choose either.  *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011).  The antitrust and consumer statutes at issue also provide a basis in law for an award of attorneys' fees; where the authorization for fees is statutory, a lodestar and multiplier analysis with a percentage-of-the-fund cross-check is appropriate.  *Id.* at 941-42, 44-45.  And whichever is chosen as the primary method to calculate attorneys' fees, the Ninth

United States District Court
Northern District of California

Circuit encourages district courts to conduct "a cross-check using the other method." *Online DVD*, 779 F.3d at 949. Counsel here request 33⅓% percent of the total (or gross) $52 million settlement fund, or $17,333,333. Applying a lodestar cross-check, this amounts to a 2.7 multiplier on counsel's lodestar of $6,470,731.

The Court finds that an award of attorneys' fees is appropriate and fair to compensate Plaintiffs' counsel for their substantial work in the case. However, for the reasons that follow, after careful consideration and in the exercise of discretion, the Court finds that a reasonable fee award in this case is $13,000,000, an amount somewhat lower than the award requested by counsel. This figure cross checks to slightly more than a 2.0 multiplier on counsel's lodestar and is exactly 25% of the total settlement fund, adhering to the Ninth Circuit's benchmark. It provides an adequate incentive for counsel to pursue this type of case in the future, and richly rewards counsel's efforts without providing counsel with a windfall at the expense of class members.

### 1. The Ninth Circuit's 25% Benchmark and the Percentage of the Fund

"The typical range of acceptable attorneys' fees in the Ninth Circuit is 20% to 33⅓% of the total settlement value, with 25% considered the benchmark." *Johnson v. Gen. Mills, Inc.*, No. SACV 10-00061-CJC, 2013 WL 3213832, at *6 (C.D. Cal. June 17, 2013); *see also Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002) (noting that 25% is benchmark and "usual" range of awards is 20-30%); *In re Coordinated Pretrial Proceedings in Petroleum Prod. Antitrust Litig.*, 109 F.3d 602, 607 (9th Cir. 1997) ("common fund fees commonly range from 20% to 30% of the fund created"). The 25% benchmark is the starting point, not the conclusion, of the Court's analysis. *See Vizcaino*, 290 F.3d at 1048. When evaluating whether the percentage sought by counsel is reasonable, the Court considers factors including: (1) the results achieved; (2) the risk involved with the litigation; (3) the skill required and quality of work by counsel; (4) the contingent nature of the fee; and (5) awards made in similar cases. *Id.* at 1048-1050. The Court may adjust the benchmark to account for "special circumstances." *Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990).

Plaintiffs argue that in most common fund cases, the award exceeds that benchmark, and that they might have negotiated a 33% contingency fee in a typical case with an individual client.

But this reasoning obviates the notion of a benchmark. Twenty-five percent is not a baseline from which the Court can only depart upwards. Plaintiffs cite a number of cases in which fee awards ranged from 30% to 33%. Those cases include one recent decision of this Court, in which the Court awarded attorney's fees in the amount of $9,333,333 million, which was one third of a common fund of $28 million and reflected a multiplier of 1.81. *Bickley v. Schneider Nat. Carriers, Inc.*, No. 4:08-cv-05806-JSW, 2016 WL 6910261 (N.D. Cal. Oct. 13, 2016). The *Bickley* case illustrates why it is not appropriate for the Court to award one third of the settlement fund in this case merely because it has done so in other cases. The fund in *Bickley* was smaller; the lodestar multiplier cross-check was lower; and the recovery and distribution to the class in that case were truly exceptional.

Plaintiffs further contend that the length and scope of this litigation support a higher fee award. The case has lasted approximately six years and has included motions to dismiss, extensive discovery (including significant expert and third-party discovery), class certification proceedings (including Defendants' unsuccessful petition for permissive appeal), the briefing of summary judgment, *Daubert*, and decertification motions, and extensive mediation. In addition to risks faced earlier in the case, at the time of settlement, Plaintiffs faced significant risks from Defendants' pending motions. As discussed above, the settlement resulted in a good recovery for the class compared to the total possible damages. All of this indeed supports a substantial fee award, but it is fully taken into account in the lodestar cross-check, which includes a multiplier. Likewise, counsel's quality work is reflected in the lodestar cross-check as captured by their high billing rates. The 25% fee award adequately reflects and rewards counsel's efforts.

Holyoak objects to Plaintiffs' requested 33% fee award on the basis that $52 million constitutes a megafund settlement. As such, he argues, a fee of substantially less than the 25% benchmark is appropriate, because it "is generally not [52] times more difficult to prepare, try and settle a $[52] million case than it is to try a $1 million case." *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 486 (S.D.N.Y. 1998). Courts in this district have recognized that a fee award of less than the benchmark may be reasonable in megafund cases. *See, e.g.*, *In re High-Tech Employee Antitrust Litig.*, No. 11-cv-02509-LHK, 2015 WL 5158730, at *13 (N.D.

Cal. Sept. 2, 2015) ("accepting that the median attorney's fees award in a sample of 68

'megafund' class action settlements over a 16-year period was 10.2%, an award here of 9.8% is

reasonable"); *see also Alexander v. FedEx Ground Package Sys., Inc.*, No. 05-cv-00038-EMC,

2016 WL 3351017, at *2 (N.D. Cal. June 15, 2016) (fee award in megafund cases typically "is

substantially less than the 25% benchmark applicable to typical class settlements in this Circuit").

Plaintiffs respond that this is not a megafund case because the common fund does not

exceed 100 million.  See, e.g., *Alexander v. Fedex Ground Package Sys., Inc.*, No. 05-cv-00038-

EMC, 2016 WL 1427358, at *8 (N.D. Cal. Apr. 12, 2016); *In re HPL Techs., Inc. Sec. Litig.*,

366 F. Supp. 2d 912, 925 (N.D. Cal. 2005).  Plaintiffs also argue that in some megafund cases, a

fee of more than the 25% benchmark has been awarded.  Although the Court agrees that this is not

a megafund case as such, the fund is very large—somewhere between a typical fund and a

megafund.  Ultimately, the same reasoning applies: "Rather than abandon the percentage-of-

recovery method, the best way to guard against a windfall is first to examine whether a given

percentage represents too high a multiplier of counsel's lodestar." *In re: Cathode Ray Tube (CRT)

Antitrust Litig.*, No. 1917, 2016 WL 4126533, at *6 (N.D. Cal. Aug. 3, 2016) (awarding a fee

award of 27.5 percent of a megafund with a lodestar cross-check of a 1.96 multiplier).

The Court finds that it has discretion to award attorney's fees in the amount requested by

Plaintiffs, or in a significantly lower amount, as requested by the objectors.  In the exercise of

discretion, the Court finds that a benchmark fee award of 25% is the most reasonable in this case,

amply rewarding class counsel for their substantial efforts, providing an incentive for counsel to

take this type of cases, and yet not serving as a windfall given the large settlement fund.

###### 2.      Use of Gross or Net Settlement Fund to Calculate Fee

The Court has calculated the 25% fee award based on the gross settlement fund, not the net

after expenses, service awards, and costs of administration.  This decision acknowledges that

counsel have conducted the litigation and the settlement administration in a cost-effective manner

on behalf of the class, and reaches a reasonable result.  The Court overrules the objections of

Holyoak, Erwin, and O'Brian that the cost of notice and administration, as well as litigation

expenses, are included in the denominator in calculating the requested fees as a percentage of the

United States District Court
Northern District of California

14

United States District Court
Northern District of California

common fund and the litigation expenses are not included in the numerator.  The Ninth Circuit has made clear that this Court has discretion to calculate the fee based on either the gross or the net fund.  *See, e.g.*, *Online DVD*, 779 F.3d at 953 ("The district court did not abuse its discretion in calculating the fee award as a percentage of the total settlement fund, including notice and administrative costs, and litigation expenses."); *Powers v. Eichen*, 229 F.3d 1249, 1258 (9th Cir.2000) (no particular approach to determining fees mandated; "choice of whether to base an attorneys' fee award on either net or gross recovery should not make a difference so long as the end result is reasonable"); *see also In re Transpacific Passenger Air Transportation Antitrust Litig.*, No. C 07-05634 CRB, 2015 WL 3396829, at *1 (N.D. Cal. May 26, 2015) (explaining that district court has discretion to use either approach as long as the end result is reasonable).  Here, the Court finds that a fee award of one third of the total settlement fund, which would be nearly 40% of the net fund after expenses, would be excessive and unreasonable, especially in light of the size of the fund.  On the other hand, an award of 25% of the total fund is reasonable by any measure.  The Court notes in particular that there is no indication that class counsel inflated any expenses for the purpose of increasing their fee award.  The requested award of expenses is reasonable given the scope and duration of the litigation, and is adequately documented consistent with this Court's Procedural Guidance for Class Action Settlements.  The Court also is favorably impressed that although costs of settlement administration must not exceed two million dollars, counsel has not spent up to that limit.[1]  In fact, it appears that the actual costs will be less than one million dollars.  (Nov. 10, 2016 Qiu Decl. ¶ 8.)  Counsel's cost-effective decisions with regard to settlement administration weigh against discounting the attorney's fee by calculating it on the net fund.  In light of counsel's extensive work and reasonable spending choices, and in light of the reasonableness of the multiplier of 2 in the lodestar cross-check, it would be inappropriate to reduce the award further in this particular case by calculating it on the net fund rather than the gross fund.  The end result of $13,000,000 is reasonable.

---

[1] The Court also overrules O'Brian's inaccurate objection that class counsel did not engage in a competitive bidding process in the selection of the claims administrators.  (Byszewski Decl. ¶ 2.)

### 3. Lodestar Cross-Check and Multiplier

The Court performs a cross-check of the percentage fee award against counsel's lodestar to ensure that the amount awarded is reasonable. *Online DVD*, 779 F.3d at 949. Here, a fee award of 25% cross-checks to a multiplier of just over 2. The Court finds that this multiplier is not exorbitant and does not unduly reduce the class's recovery, and is appropriate to "incentivize attorneys to represent class clients, who might otherwise be denied access to counsel." *Stanger v. China Elec. Motor, Inc.*, 812 F.3d 734, 741 (9th Cir. 2016). In determining the appropriate multiplier, the Court may consider factors that include: (1) the amount involved and the results obtained; (2) the time and labor required; (3) the novelty and difficulty of the questions involved; (4) the skill requisite to perform the legal service properly; (5) the preclusion of other employment by the attorney due to acceptance of the case; (6) the customary fee; (7) the experience, reputation, and ability of the attorneys; and (8) awards in similar cases. *Bluetooth*, 654 F.3d at 941-42. These are referred to as the *Kerr* "reasonableness" factors after the Ninth Circuit's opinion in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975). [2] Foremost among these considerations is the "benefit obtained for the class." *Bluetooth*, 654 F.3d at 942. This factor, like the others, supports the Court's multiplier of just over 2, which is well within the range awarded in other cases, and which supports the substantial $13,000,000 award.

Lodestar is calculated "by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." *Bluetooth*, 654 F.3d at 941. Generally, the Court defers to counsel's professional judgment regarding the time required to be spent on the case. *See Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008). The requested fees and costs here are supported by adequate records provided by officers of the Court that comply with the Court's Procedural Guidance for Class Action Settlements. The Court has no reason to

---

[2] The Supreme Court has called into question the relevance of two of the original *Kerr* factors: the contingent nature of the fee and the "desirability" of the case. *See Resurrection Bay Conserv. All. v. City of Seward*, 640 F.3d 1087, 1095 (9th Cir. 2011). The Court has not, in any case, placed weight on those factors here. Other factors such as "time limitations imposed by the client or the circumstances" and "the nature and length of the professional relationship with the client" also do not apply in this case.

United States District Court
Northern District of California

United States District Court
Northern District of California

believe that Plaintiffs' counsel inflated their fees, and overrules all objections that suggest that the requested lodestar amount is too high. *See id.* ("lawyers are not likely to spend unnecessary time on contingency fee cases in the hope of inflating their fees. The payoff is too uncertain, as to both the result and the amount of the fee."). The Court also finds that counsel has adequately documented that their hourly rates, although high, are in line with market rates in this district. The market rates accurately reflect counsel's skill and experience.

Applying a multiplier of 2 to those market rates fairly rewards counsel for their effort, the duration of the litigation and time during which it prevented counsel from doing other work, the risk involved, and each of the other *Kerr* factors. Given the amounts at issue, the multiplier— which provides counsel with more than six and a half million dollars on top of the lodestar—will amply incentivize counsel to take on similar cases in the future. The Court overrules all objections that encourage the Court to apply no multiplier or a lower multiplier, which would not be fair or reasonable under the circumstances of this case.

### 4.    Fee Allocation Among Attorneys

The Court overrules the objections of Erwin and O'Brian to an award of fees without an order allocating those fees among Plaintiffs' counsel. Formal fee allocation is unnecessary in this case, where a limited number of firms are involved and there is no indication of any disagreement among the firms regarding fee allocation. *See generally* Newberg on Class Actions § 15:23 (5th ed.); *see also, e.g.*, *Presley v. Carter Hawley Hale Profit Sharing Plan*, No. C 97-04316-SC, 2000 WL 16437, at *2 (N.D. Cal. Jan. 7, 2000) (awarding aggregate fees and directing that they be distributed to lead counsel "for distribution among Class Counsel in accordance with the terms of their agreement and the terms of the Agreement").

This case is distinguishable from the Fifth Circuit case relied upon by the objectors, in which the district court effectively delegated the authority to a five-member fee committee of certain class counsel to allocate a fee award among 32 law firms. *In re High Sulfur Content Gasoline Prods. Liab. Litig.*, 517 F.3d 220, 229, 233-34 (5th Cir. 2008). Here, the fee allocation will take place outside of the judicial process, thus avoiding the Fifth Circuit's concern regarding the use of the judicial process, without meaningful judicial oversight, for a few attorneys to

United States District Court
Northern District of California

1  impose a fee allocation on other firms.  *See id.* at 234 ("It is one thing for all attorneys to come to

2  an agreement about dividing up fees, and quite another for five attorneys to declare how an award

3  will cover themselves and seventy-four other attorneys with no meaningful judicial supervision or

4  review.").

5       The Court will retain jurisdiction to adjudicate disputes relating to attorney's fees that are

6  raised within 90 days after the claims administrator provides the final report regarding the

7  disbursement of the settlement funds, by which time Plaintiffs' counsel should have reached

8  agreement or realized that disputes exist and brought them before the Court.

9  **E.     Class Counsel's Costs**

10      The Court grants Plaintiffs' request for reimbursement to counsel of $2,396,886.21 for out-

11  of-pocket expenses incurred on behalf of the class, which are supported by the declarations in

12  support of the motion.  *See OmniVision*, 559 F. Supp. 2d at 1048.  These litigation expenses

13  include court fees, service, copying, postage, legal research, experts and consultants, depositions,

14  and travel.  *See, e.g., In re Media Vision Tech. Sec. Litig.,* 913 F. Supp. 1362, 1366 (N.D. Cal.

15  1995).  The Court overrules the objections to the award of costs, which are speculative and

16  unsupported.

17  **F.     Service Awards**

18      Plaintiffs also request that the Court approve the service awards in the amount of $5,000

19  each for the eighteen class representatives, totaling $90,000.  Service awards for class

20  representatives are provided to encourage individuals to undertake the responsibilities of

21  representing the class and to recognize the time and effort spent on the case.  As the Ninth Circuit

22  recognized in *Online DVD*, "incentive awards that are intended to compensate class

23  representatives for work undertaken on behalf of a class are fairly typical in class action cases."

24  779 F.3d at 943.

25      As detailed in the declarations provided by Plaintiffs, the eighteen class representatives

26  spent a significant amount of time assisting in the litigation of this case.  Each aided with the filing

27  of a complaint, responded to written discovery, produced documents, and sat for a deposition.  For

28  these reasons, the service awards do not create a conflict of interest between the class

1    representatives and the settlement class.  And the requested awards of $5,000 each are "well

2    within the usual norms of modest compensation paid to class representatives."  *Id.*

3         The Court overrules the objections of Andrews and O'Brian to the service awards.

4    Plaintiffs have confirmed that the service awards in this case neither involve an *ex ante* agreement

5    between the class representatives and class counsel nor are conditioned on the class

6    representatives' support for the settlement.  *See id.* (distinguishing *Rodriguez*, 563 F.3d at 963, and

7    *Radcliffe v. Experian Information Solutions Inc.*, 715 F.3d 1157, 1164 (9th Cir. 2013)).

8         The Court therefore grants the motion for service awards of $5,000 each for the eighteen

9    class representatives.

### CONCLUSION

10        For the reasons set forth in this order, the Court OVERRULES all objections received

11   except to the extent that they object to the request for attorneys' fees of one third of the settlement

12   fund as too high in the exercise of discretion, consistent with this Court's analysis.

13        The Court GRANTS IN PART Plaintiffs' motion for attorneys' fees, costs, and incentive

14   awards, as set forth above.  (Dkt. No. 436.)  It is hereby ordered that Plaintiffs' counsel be

15   awarded attorneys' fees in the total amount of $13,000,000 from the common fund awarded to the

16   certified classes (equal to 25% of the total fund).  The Court also orders that Plaintiffs' counsel be

17   reimbursed for their expenses incurred in the amount of $2,396,886.21.  Finally, the Court awards

18   that service awards be made in the amount of $5,000 to each of the eighteen class representatives,

19   for a total of $90,000.

20        The Court DENIES the motion to suppress (Dkt. No. 455) and the motion to unseal records

21   (Dkt. No. 453) filed by pro se objector Christopher Andrews.

22        The Court GRANTS Plaintiffs' motion to strike objector Conner Erwin's reply in support

23   of his objections.  (Dkt. No. 466.)  The Court has not considered Erwin's reply.

24   ///

25   ///

26   ///

27   ///

28

United States District Court
Northern District of California

1        The Court will grant Plaintiffs' pending motion for final approval of the class action

2   settlement by separate order.

3        **IT IS SO ORDERED.**

4   Dated: June 26, 2017

5

6                                         _____

7                                         JEFFREY S. WHITE
                                          United States District Judge