Class Action Clerk

U.S. District Court for the

Northern District of California

1301 Clay Street

Oakland, California 94612



FILED

AUG 09 2017

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

**In re: Edwards v. National Milk Producers Federation,**
**Case No. 4:11-cv-04766-JSW**

Judge Jeffrey S. White

Christopher Andrews, Pro se



Objector, non attorney

Response to Motion for Appeal Bond

September 15, 2017 at 9:00 a.m.

Courtroom 5 on the 2nd Floor

Class Counsel's theme in their motion is this objector's issues are "frivolous" and he has not shown to them the informa document because it is sealed. The objector will address both. The first reversible issue is this court failed to articulate in its approval order why any multiplier was justified, contrary to Supreme Court precedent.

A 2.7 multiplier was clearly not appropriate here. The Supreme Court has established a "strong presumption that the lodestar is sufficient" without an enhancement multiplier. *Perdue v. Kenny A.*, 130 S. Ct. 1662, 1669 (2010). A lodestar enhancement is justified only in "rare and exceptional" circumstances where "specific evidence" demonstrates that an unenhanced "lodestar fee would not have been adequate to attract competent counsel." *Id.* at 1673; *accord Forshee v. Waterloo Indus., Inc.,* 178 F.3d 527, 532 (8th Cir. 1999) (noting that only in "rare" and "exceptional" cases, "counsel may be entitled to a multiplier to reward them for taking on risk and high quality work"). "[T]he burden of proving that an enhancement is necessary must be borne by the fee applicant." *Id.*

This is not a rare and exceptional circumstance type settlement, it's the opposite.

Another issue that can be appealed that was raised is the incentive awards that clearly violate 9Th Circuit precedent. This one issue alone will cause a reversal.

Next, the Incentive Awards creates a conflict of interest for the named plaintiff and precludes certification of the class under Rule 23(a)(4) making this approval reversible error and class counsel knows it. In the original notice the unnamed plaintiffs it was stated that we could receive "$30 that could be higher or lower".

Here, we have a settlement where the class representative will were paid $5,000.00 or 16,666% more than unnamed individual class members can receive on the original estimate of $30.00. The amount of hours each named plaintiff is intentionally left out to obscure the small number hours spent by the named class members that caused them to be out of the loop and rubber stamp pawns used by class counsel. The attorneys walk away with $13,000,000.00 so the main beneficiaries of this settlement are the attorneys and named plaintiffs. In the battery II settlement they reduced the incentive award to $1,500.00 and documented it unlike in this case. There is a tremendous question of Rule 23(a)(4) adequacy: were the class representatives and counsel in this case acting in the best interests of the class, or in the best interests of class counsel? No. See Pampers, supra. If the latter, then the plaintiffs cannot satisfy the 23(a)(4) and (g)(4) adequacy inquiries. See Lobatz v. U.S. West Cellular of Cal., Inc., 222 F.3d 1142, 1147 (9th Cir. 2000) (if "class counsel agreed to accept excessive fees and costs to the detriment of class plaintiffs, then class counsel breached their fiduciary duty to the class."); Creative Montessori Learning Ctrs. v. Ashford Gear

LLC , 662 F.3d 913, 917 (7th Cir. 2011) (counsel must show the district court that "they would prosecute the case in the interest of the class . . . rather than just in their interests as lawyers who if successful will obtain a share of any judgment or settlement as compensation for their efforts."). The class must be decertified if there is anything less than "undivided loyalties." Broussard , 155 F.3d at 338. At a minimum, the settlement must be rejected as unfairly dividing the constructive common fund.

The Ninth Circuit has disavowed these types of disproportionate incentive awards. See Radcliffe v. Experian Info. Solutions , 715 F.3d 1157 (9th Cir. 2013). The Ninth Circuit determined that incentive awards conditioned upon endorsement of the settlement proposed were impermissible. But more than that, "the significant disparity between the incentive awards and the payments to the rest of the class members further exacerbated the conflict of interest caused by the conditional incentive awards." Id . at 1165. "There is a serious question whether class representatives could be expected to fairly evaluate whether awards ranging from $26 to $750 is a fair settlement value when they would receive $5,000 incentive awards." Id . As the disparity here is similar—$5,000 per representative, at most $60.00 per class member—the logic of Radcliffe applies just as forcefully. In such situations there is a well-founded fear that named representatives will be "more concerned with maximizing [their own gain] than with judging the adequacy of the

settlement as it applies to class members at large." Id. (quoting Staton , 327 F.3d at 977). 24Staton had also repudiated disproportionate incentive awards.

Apart from the fee award, the settlement also assures the named plaintiffs an unchallenged application for an incentive award of $5,000. There is an "overlap" between the deal obtained by the named representatives and the unnamed class members. Pampers , 724 F.3d at 722. While the class members' shares can be reduced  pro rata the named plaintiff's incentive award is fixed. This payment makes the named plaintiff far more than whole and "provide[s] a disincentive  for the named plaintiff to care about the adequacy of relief afforded unnamed class members." Pampers , 724 F.3d at 722.

The Seventh Circuit referred to this phenomenon as "leverag[ing]" "the class device...for one person's benefit."  Murray v. GMAC Mortg. Corp., 434 F.3d 948, 952 (7th Cir. 2006). In  Murray, the incentive payment "of $3,000...[was] three times the statutory maximum, while others don't get even the $100 that the  Act specifies as the minimum." Id.  "Such a settlement is untenable." Id.

 "The premise of a class action is litigation by representative parties adjudicates the rights of all class members, so basic due process requires that named plaintiffs possess undivided loyalties to absent class members." Broussard v. Meineke Discount Muffler Shops, Inc., 155 F.3d 331, 338 (4th Cir. 1998).

The 9th Circuit will also reverse based on the lack of Spanish Notice and a Spanish Claim Form. How may claim forms have a Spanish name compared to 12% of the population speaking Spanish and 9 million unable to even speak English let alone read it as has been shown? See the problem? The lack of those two forms dooms this for counsel on appeal. This was another error overlooked by plaintiffs in their rush to celebrate. Even the State of California prints many documents in Spanish. Class counsel recognized their error by posting a Spanish notice in the battery II settlement which this court has also made a ruling in recently. They simply forgot in this settlement to post a Spanish Notice violating Rule 23 notice provisions. The objector has been teaching Hagens the proper way to construct a legally valid settlement in this and two other cases as we go along. The difference in Battery I and Battery II is jaw dropping but is of no help in this settlement.

Next class counsel fibbed in their fee petition, the objector raised the issue of rates.

## The Hourly Rate Shenanigans Game

The only basis for Hagens claimed hourly rates are rubber stamps made by past courts who were misled by omission in the past. Hagens with some others in this case work on pure contingency basis and do not bill hourly rates to clients because they do not have paying clients so there is no accurate basis for the hourly rates

claimed in the past and in this case. Their past awards and current request is based on a misleading hourly rate shenanigan game that has been going on for years.

The attached new article, Exhibit 1, will show what is also occurring in this case. Those lawyers are not sorry, just sorry that they got caught after all these years of tens of millions of dollars of overpayment of fees accumulated by apparent fraud. This adds up to bad faith and breaching their fiduciary duties to the class. Class counsel appears to have reversed engineered the inflated lodestar hours based on a 2.7 multiple to closely match their inflated percentage of fund request. Misleading the class and court is grounds for the appeals court to reverse and order this court to severely reduce or eliminate fees and expenses, rejection of the deals and replacement of applicable counsel for breaching their fiduciary duties to the class.

From Appellate Case: 16-1203 Page: 8 Date Filed: 02/29/2016 Entry ID: 4372412

The Ninth Circuit and the D.C. Circuit have held that a Rule 7 bond should not include costs available under Rule 38 for frivolous appeals:
We agree with the D.C. Circuit that the question of whether, or how, to deter frivolous appeals is best left to the courts of appeals, which may dispose of the appeal at the outset through a screening process, grant an appellee's motion to dismiss, or impose sanctions including attorney's fees under Rule 38. *In re Am. President Lines*, 779 F.2d at 717. Allowing districts court to impose high Rule 7 bonds on where the appeals *might* be found frivolous risks "impermissibly encumber[ing]" appellants' right to appeal and "effectively preempt[ing] this court's prerogative" to make its own frivolousness determination. *Id.* at 717, 718; *see also Adsani*, 139 F.3d at 79. "[A]ny attempt by a court at preventing an appeal is unwarranted and cannot be tolerated.") (quoting *Clark v. Universal Builders, Inc.*, 501 F.2d 324, 341 (7th Cir. 1974)). *Azizian*, 499 F.3d at 961; *but see Tennille*, 774 F.3d at 1255 ("the First Circuit, contrary to several other circuits,

permits an appeal bond to cover attorneys' fees recoverable under Fed. R. App. P. 38") (citing *Sckolnick v. Harlow*, 820 F.2d 13, 14-15 (1st Cir. Appellate Case: 16-1203 1987). As the Ninth Circuit explained, a district court does not get to prejudge the appeal and "deter" appeals it does not like through excessive appeal bonds. *Azizian*, 499 F.3d at 961; *Vaughn*, 507 F.3d at 299; *Am. President Lines*, 779 F.2d 714; *but see Adsani*, 139 F.3d at 79. If a judge improperly chills appeals of its decisions, it could forever avoid review of its rulings. *Cf. Robert F. Booth Trust v. Crowley*, 687 F.3d 314, 318 (7th Cir. 2012) ("A district judge ought not try to insulate his decisions from appellate review....").

Attached also is a copy of an order from the 9th Circuit and the informa document sent back to them today for this case that has also was sent to the district court was not forwarded to them earlier. (Exhibit 2)

<div align="center">Conclusion</div>

If the objector could pay the $1,000.00 today he would but can't. Based on the meritorious issues raised at the district court level, some repeated above, these issues are a light year from frivolous. Any bond is inappropriate due to the objector's financial condition because it would create an impermissible barrier to appeal so the bond request should be rejected for all the reasons above. He intends to win slam dunk at the 9th Circuit due to class counsel's errors.

I certify under penalty of perjury of the United States that all of the above is true and accurate to the best of my knowledge.

Christopher Andrews, Pro Se Objector, PO Box 530394 Livonia, MI 48153-0394

Telephone 248-635-3810    Email: caaloa@gmail.com    August 08, 2017

Proof of Service

I hereby certify that on this day August 08, 2107 the objector mailed this objection

to the Class Action Clerk, U.S. District Court for the Northern District of

California, 1301 Clay Street Oakland California 94612 per the instructions in the

Long Notice via USPS Priority Mail. A copy was mailed to class counsel.

Christopher Andrews, Pro Se Objector, PO Box 530394 Livonia, MI 48153-0394

Telephone 248-635-3810 and email caaloa@gmail.com

EXHIBIT 1

Arkansas Teacher Retirement System v. State Street Corporation et al

1:11-cv-10230 Mass

Special Master To Probe $75M Fee Request In State St. Deal

By Brian Amaral

Law360, Boston (March 7, 2017, 8:28 PM EST) -- A federal judge in Boston on Tuesday said he has
tapped a special master to look into possible attorney-fee improprieties in a $300 million class action
settlement with State Street Corp. over its foreign exchange practices.
The class action suit alleged that State Street, a global financial services holding company, marked up its
indirect foreign exchange trades with hidden fees and gave itself better rates than its own customers.
State Street paid $530 million to settle the suit and separate government investigations.

Senior U.S. District Judge Mark Wolf's unopposed decision Tuesday on the special master came after
attorneys from three plaintiffs' firms — Thornton Law Firm LLP, Labaton Sucharow and Lieff Cabraser
Heimann & Bernstein LLP — said they inadvertently double-counted $4 million worth of attorney hours
in coming to a $75 million fee request. Class attorneys also had to explain to Judge Wolf why they used
upward of $400 hourly rates for some attorneys to justify their fee request when those attorneys had
been paid as little as $25 to $50 an hour to review documents.



Judge Wolf said that the lawyers in the case had led him to believe that their
calculation of attorneys' fees was based on what the firms regularly billed clients
for work. Labaton and Thornton acknowledged Tuesday they never billed clients
for their time, but instead only worked on contingency.



"I think there are probably many other judges that made the same mistake — have
understood the representations made the way I have, for many years," Judge Wolf
said.

Though Judge Wolf gave final approval for the settlement in November, reports in The Boston Globe
have raised questions about the double-billing and inflated pay rates — an offshoot of larger troubles
faced by Thornton Law Firm, which is being investigated for alleged straw donations to politicians
around the country, according to the Globe. The paper has also raised questions about political
donations by Labaton and Thornton lawyers to leaders of pension funds that then hired the firms to file
lawsuits. A lawyer for Thornton declined to comment.

Retired federal judge Gerald Rosen, who will be the special master, will make a report and
recommendation after his investigation, which could involve hiring lawyers and accountants and taking
depositions, and could result in sanctions or a reduction in attorneys' fees. Thornton, Labaton and Lieff

Cabraser will pay $2 million total to fund the probe, which will look into the fee arrangement, apparent overbilling and inflated pay rates, as well as the service awards given to named plaintiffs.

In calculating how much the lawyers would get for the class action settlement, the lawyers used the lodestar method, which takes the amount of time attorneys worked on the case and bases it on the going rate for attorneys in the community. In this case, that figure was multiplied by 1.8 to get to $75 million, or 25 percent.

But Labaton admitted in a November letter to Judge Wolf that the three lead firms had misstated the time worked by document-research attorneys by some 9,000 hours.

Joan Lukey of Choate Hall & Stewart LLP, representing Labaton, told Judge Wolf that while the issue was still under internal investigation, some sort of miscommunication occurred between Labaton's accounting department and the partner who was putting the attorneys' fee request together. The mixup occurred in part because the firms were sharing costs of the document-review staff, Lukey said.

"We don't countenance that, and I'm very embarrassed by it," Lawrence Sucharow of Labaton Sucharow told Judge Wolf. "I personally don't know where the failure occurred."

The firms have asked Judge Wolf to keep the attorneys' fees at $75 million, saying it is still reasonable to multiply the amount of hours they'd actually done by a higher number, 2 instead of 1.8. They acknowledged the problem after they were asked by a reporter for the Boston Globe's Spotlight team, the same group of reporters featured in the 2015 film by the same name.

The paper has also reported that while some attorneys were paid as low as $25 an hour at times to review documents, their hours were pegged at $425 an hour to calculate the lodestar.

"Were those rates attributed to the lawyers ever charged to paying clients?" Judge Wolf asked Sucharow.

"We don't have paying clients, Your Honor," Sucharow said, adding that they were based on industry standards, including the defense bar. "In essence, if the rule were you could only charge what you charge a billable client, we'd be all out of business."

Instead of charging clients directly, lawyers who are working on contingency collect a portion of whatever is recovered for them. When divvying up fees, they have to estimate how much they otherwise would have charged to paying clients — difficult, Thornton and Labaton said, when they have no paying clients at all.

Judge Wolf said later that the attorneys' original explanation in their request for fees seemed "to be something other than you're explaining to me now."

"I'm sorry about that," Sucharow said.

William Paine of Wilmer Cutler Pickering Hale & Dorr LLP, an attorney for State Street, told Judge Wolf that its client paid about $35 per hour to attorneys to do document-review work.

Among the other issues that the Globe brought to light: A brother of Thornton partner Garrett Bradley who typically charged $53 an hour for local public defender work was paid $500 an hour — a claim that Brian Kelly of Nixon Peabody LLP, an attorney for the Thornton Law Firm, suggested was taken out of context.

Michael Bradley told Judge Wolf that he'd actually done the 406 hours he'd billed the class for, and that while he'd never worked for his brother's firm before, he had charged as much as $450 an hour for certain cases, and later took Thornton asbestos class action cases for $250 to $300 an hour.

Garrett Bradley, a high-ranking Democratic state legislator until his resignation last year, said the $500 an hour rate for his brother was based in part on what Michael Bradley had recently billed for an estate case, $450 an hour. Since Michael Bradley wasn't going to be paid unless and until they won, they adjusted the rate to $500 an hour.

Garrett Bradley also said it was a mistake to tell Judge Wolf in court filings that his firm had paid certain attorneys, when they actually worked at Labaton.

"Admittedly, Your Honor, with the language, we should have been clearer in this, and that fault lies with me," Bradley said.

Theodore H. Frank, an attorney for the Competitive Enterprise Institute, on Tuesday asked to be allowed to follow along as an amicus or a guardian ad litem in the suit to ensure that the interests of the class are properly represented. Judge Wolf said he'd take the request under advisement. The back-and-forth between Frank and the plaintiffs' attorneys has featured lengthy briefs and what Frank categorized as "ad hominem" attacks.

"If the right number had been used, the total lodestar would have been cut by more than half," Frank said in an email to Law360 after the hearing, "but dozens of firms in dozens of cases have been misreporting lodestar."

Labaton Sucharow is represented by Joan Lukey of Choate Hall & Stewart LLP.
Thornton Law Firm is represented by Brian Kelly of Nixon Peabody LLP.

The case is Arkansas Teacher Retirement System v. State Street Bank & Trust Co., case number , in the U.S. District Court for the District of Massachusetts.

--Additional reporting by Jack Newsham. Editing by Bruce Goldman.

*EXHIBIT 2*

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

AUG 01 2017

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS



| | |
|---|---|
| MATTHEW EDWARDS; et al., | No. 17-16459 |
| Plaintiffs - Appellees, | D.C. Nos. 4:11-cv-04766-JSW, 4:11-cv-04791-JSW, 4:11-cv-05253-JSW |
| v. | U.S. District Court for Northern California, Oakland |
| CHRISTOPHER ANDREWS, | |
| Objector - Appellant, | **ORDER** |
| v. | |
| NATIONAL MILK PRODUCERS FEDERATION, AKA Cooperatives Working Together; et al., | |
| Defendants - Appellees. | |

A review of the docket reflects that appellant has not paid the docketing and filing fees for this appeal. Within 21 days from the date of this order, appellant shall: (1) file a motion with this court to proceed in forma pauperis; (2) pay $505 to the district court as the docketing and filing fees for this appeal and provide proof of payment to this court; or (3) otherwise show cause why the appeal should not be dismissed for failure to prosecute. The filing of a motion to proceed in forma pauperis will automatically stay the briefing schedule under Ninth Circuit Rule 27-

11. Any motion to proceed in forma pauperis must include a financial declaration such as the attached Form 4.

   If appellant fails to comply with this order, this appeal will be dismissed automatically by the Clerk for failure to prosecute. *See* 9th Cir. R. 42-1.

<div style="margin-left:40%">

FOR THE COURT:

MOLLY C. DWYER
CLERK OF COURT

By: Cyntharee K. Powells
Deputy Clerk
Ninth Circuit Rule 27-7

</div>

**Form 4.**    **Affidavit Accompanying Motion for Permission to Appeal In Forma Pauperis**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

This form is available as a fillable version at:
http://cdn.ca9.uscourts.gov/datastore/uploads/forms/Form4-IFP-Affidavit.pdf .

***Instructions***: Complete all questions in this application and then sign it. Do not leave any blanks: if the answer to a question is "0," "none," or "not applicable (N/A)," write in that response. If you need more space to answer a question, attach a separate sheet of paper identified with your name, your case's docket number, and the question number.

Case No. | 17-16459 |

Appellant(s) or Petitioner(s) | CHRISTOPHER ANDREWS |

v.

Appellee(s) or Respondent(s) | EDWARDS VS. NATIONAL MFCK PANCES |

---

**Affidavit in Support of Motion**

I swear or affirm under penalty of perjury that, because of my poverty, I cannot prepay the docket fees of my appeal or post a bond for them. I believe I am entitled to redress. I swear or affirm under penalty of perjury under United States laws that my answers on this form are true and correct. 28 U.S.C. sec. 1746; 18 U.S.C. sec. 1621.

Signed: *Christopher Andrews*    Date: AUGUST 08, 2017

---

My issues on appeal are:

SEE ATTACHED RESPONSE TO MOTION FOR APPEAL BOND.

-1-

1. For both you and your spouse estimate the average amount of money received from each of the following sources during the past 12 months. *(Adjust any amount that was received weekly, biweekly, quarterly, semiannually, or annually to show the monthly rate. Use gross amounts, that is, amounts before any deductions for taxes or otherwise.)*

| Income Source | Average monthly amount during the past 12 months | | Amount expected next month | |
|---|---|---|---|---|
| | You | Spouse | You | Spouse |
| Employment | $ *NA* | $ *NA* | $ *NA* | $ |
| Self-Employment | $ *1500.00* | $ | $ *1000.00* | $ |
| Income from real property (such as rental income) | $ *NA* | $ | $ *NA* | $ |
| Interest and Dividends | $ *NA* | $ | $ *NA* | $ |
| Gifts | $ *NA* | $ | $ *NA* | $ |
| Alimony | $ *NA* | $ | $ *NA* | $ |
| Child Support | $ *NA* | $ | $ *NA* | $ |
| Retirement (such as social security, pensions, annuities, insurance) | $ *NA* | $ | $ *NA* | $ |
| Disability (such as social security, insurance payments) | $ *NA* | $ | $ *NA* | $ |
| Unemployment Payments | $ *NA* | $ | $ *NA* | $ |
| Public-Assistance (such as welfare) | $ *NA* | $ | $ *NA* | $ |
| Other (specify) | $ *NA* | $ | $ *NA* | $ |
| TOTAL MONTHLY INCOME: | $ *1500.00* | $ | $ *1000.00* | $ |

2. List your employment history for the past two years, most recent employer first.
*(Gross monthly pay is before taxes or other deductions.)*

| Employer | Address | Dates of Employment | | Gross Monthly Pay |
|---|---|---|---|---|
| SELF | PC BOX 530594 LIVONIA MI 48153 | From | To | $ 7,400.00 |
| | | From | To | $ |
| | | From | To | $ |
| | | From | To | $ |

3. List your spouse's employment history for the past two years, most recent employer first.
*(Gross monthly pay is before taxes or other deductions.)*

| Employer | Address | Dates of Employment | | Gross Monthly Pay |
|---|---|---|---|---|
| NA | | From | To | $ |
| | | From | To | $ |
| | | From | To | $ |
| | | From | To | $ |

4.   How much cash do you and your spouse have?   $ _188.00_

Below, state any money you or your spouse have in bank accounts or in any other financial institution.

| Financial Institution | Type of Account | Amount You Have | Amount Your Spouse Has |
|---|---|---|---|
| CAPITALS BANK | CHECKING | $ 21.00 | $ N/A |
| ENCOMPASS CREDIT UNION | SAVINGS | $ 19.00 | $ |
| TD AMERITRADE | INVEST | $ 1.46 | $ |
| | | $ | $ |

*If you are a prisoner seeking to appeal a judgment in a civil action or proceeding, you must attach a statement certified by the appropriate institutional officer showing all receipts, expenditures, and balances during the last six months in your institutional accounts. If you have multiple accounts, perhaps because you have been in multiple institutions, attach one certified statement of each account .*

5.   List the assets, and their values, which you own or your spouse owns. *(Do not list clothing and ordinary household furnishing.)*

| Home | Value |
|---|---|
| N/A | $ 0 |
| **Other Real Estate** | **Value** |
| N/A | $ 0 |

| Motor Vehicle: Make & Year | Model | Registration # | Value |
|---|---|---|---|
| North Don't Own | | | $ |
| | | | $ |

*Assets continued on next page*

| Other Assets | Value |
|---|---|
| *None* | $ |
| | $ |
| | $ |

6. State every person, business, or organization owing you or your spouse money, and the amount owed.

| Person owing you or your spouse | Amount owed to you | Amount owed to your spouse |
|---|---|---|
| *None* | $ | $ |
| | $ | $ |
| | $ | $ |

7. State the persons who rely on you or your spouse for support. *(If a dependent is a minor, list only the initials and not the full name.)*

| Name | Relationship | Age |
|---|---|---|
| *None* | | |
| | | |
| | | |

8. Estimate the average monthly expenses of you and your family. Show separately the amounts paid by your spouse. *(Adjust any payments that are made weekly, biweekly, quarterly, semiannually, or annually to show the monthly rate.)*

| | You | Spouse |
|---|---|---|
| Rent or home-mortgage payment *(include lot rented for mobile home)* <br> - Are real estate taxes included? ☒ Yes ☐ No <br> - Is property insurance included? ☒ Yes ☐ No | $ 700.00 | $ |
| Utilities *(electricity, heating fuel, water, sewer, and telephone)* | $ NA | $ |
| Home maintenance *(repairs and upkeep)* | $ NA | $ |
| Food | $ 90 | $ |
| Clothing | $ 0 | $ |
| Laundry and dry-cleaning | $ 10 | $ |
| Medical and dental expenses | $ 0 | $ |
| Transportation *(not including motor vehicle payments)* | $ 1050 | $ |
| Recreation, entertainment, newspapers, magazines, etc. | $ 0 | $ |
| Insurance *(not deducted from wages or included in mortgage payments)* <br> - Homeowner's or renter's................................................. | $ 0 | $ |
| - Life.................................................................................. | $ 0 | $ |
| - Health............................................................................. | $ 0 | $ |
| - Motor Vehicle............................................................... | $ 25 | $ |
| - Other: | $ 0 | $ |
| Taxes *(not deducted from wages or included in mortgage payments)* <br><br> Specify: | $ 0 | $ |
| Installment payments <br> - Motor Vehicle................................................................ | $ 0 | $ |
| - Credit Card *(Name):* | $ 0 | $ |
| - Department Store *(Name):* | $ 0 | $ |
| - Motor Vehicle................................................................ | $ 0 | $ |

-6-

| Alimony, maintenance, and support paid to others | $ *0* | $ |
| Regular expenses for the operation of business, profession, or farm *(attach detailed statement)* | $ *0* | $ |
| Other *(specify)* CABNER ET DID NMTH | $ *PLEA* | $ |
| **Total Monthly Expenses:** | $ *1,500* | $ |

9. Do you expect any major changes to your monthly income or expenses or in your assets or liabilities during the next 12 months?

    ☐ Yes    ☒ No

    *If yes, describe on an attached sheet.*

10. Have you spent--or will you be spending--any money for expenses or attorney fees in connection with this lawsuit?

    ☐ Yes    ☒ No

    *If yes, how much?* $ _____

11. Provide any other information that will help explain why you cannot pay the docket fees for your appeal.

    *NO FUNDS*

12. State the city and state of your legal residence.

    City *Via PAPLYham*    State *PA*

    Your daytime phone number *(ex., 4153558000):* *298 635-3810*

    Your age: *57*    Your years of schooling: *13*

    Last four digits of your Social Security Number *(ex.,6789):* *0573*

-7-